**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA - OCALA DIVISION**

JOSEPH BRADFIELD and )
PATRICIA BRADFIELD, )
     Plaintiffs, )     **Civil Action No.: 5:13-cv-222-Oc-10PRL**
vs. )
      )
MID-CONTINENT CASUALTY )
COMPANY, )
     Defendant. )
_____ )

## PLAINTIFFS' AMENDED MOTION FOR PARTIAL SUMMARY FINAL JUDGMENT FOR DECLARATORY RELIEF UNDER COUNT II

**COME NOW,** Plaintiffs, Joseph Bradfield and Patricia Bradfield (collectively "the Bradfields), by and through their undersigned counsel and, pursuant to Fed. R. Civ. P. 56 (2013), file their Amended Motion for Partial Summary Final Judgment For Declaratory Relief Under Count II and state as follows:

## SUMMARY OF THE PLEADINGS

On April 15, 2013, the Bradfields sued Defendant, Mid-Continent Casualty Company ("Mid-Continent") for damages and declaratory relief resulting from Mid-Continent's breach of insurance contracts in state court. (Docket No. 2)  Thereafter, on May 10, 2013, Mid-Continent removed the case to the United States District Court in and for the Middle District of Florida. (Docket No. 1)  Once removed, Mid-Continent filed its answer and affirmative defenses and a Case Management and Scheduling Order was entered on July 16, 2013, that sets April 1, 2014, for the deadline for dispositive motions.  (Docket No. 14)

## SUMMARY OF UNDISPUTED FACTS

On August 29, 2012, the Bradfields sued Winfree Homes, Inc. ("Winfree") in the Fifth Judicial Circuit Court in and for Lake County, Florida ("the Underlying Complaint"), seeking damages for the repair of the structural damages to the their custom home ("the Bradfield Home") caused by Winfree's faulty workmanship.   A copy of the Underlying Complaint is attached hereto as Exhibit "A".

Prior to Winfree beginning its work on the Bradfield Home, Mid-Continent issued three post-1986 Commercial General Liability ("CGL") policies to Winfree numbered: 04-GL-000603256, 04-GL-000632228 and GL-00674747 (collectively "the Winfree Policies").   The Winfree Policies are materially identical, except for certain endorsements that will be discussed in the argument section of this motion.   The Winfree Policies covered the time period of May 23, 2005 through January 3, 2008.   Copies of the Winfree Policies are attached to the Complaint filed in this cause as Composite Exhibits "A" and "B". (Docket No. 2)

On November 1, 2005, Winfree applied for and obtained a building permit from the Lake County Building Department for the construction of the Bradfield Home. (Ex. "D" to Underlying Complaint")   The Building Permit expressly states that it will remain in effect for six (6) months and become "null and void" if a satisfactory inspection is not completed within six (6) months. *Id.*   Thereafter, on December 3, 2006, a second building permit was applied for and issued to Richard Higo, who listed himself as the general contractor.   *Id.*

On April 12, 2012, the Bradfields received a report from the Endeavour Group, Inc. ("the Endeavour Report"), which report confirmed latent construction defects to the Bradfield Home that caused structural damage to the Bradfield Home.   A copy of the Endeavour Report is attached to the Underlying Complaint as Composite Exhibit "B".   Page three of the Endeavour

Report includes pictures of the structural damage to the Bradfield Home caused by water intrusion through defectively installed windows, which pictures bear a date of September 7, 2007.

After being served with the Underlying Complaint, Winfree provided Mid-Continent a copy of the Underlying Complaint and the exhibits attached thereto and requested that Mid-Continent undertake its defense; however, Mid-Continent declined coverage under all three of the Winfree Policies, and refused to undertake Winfree's defense in the Underlying Complaint. Specifically, on September 24, 2012; September 26, 2012; November 1, 2012; and January 3, 2013, Mid-Continent informed Winfree that it was denying coverage and would not undertake its defense of the Underlying Complaint.   A copy of Mid-Continent's letters declining to undertake Winfree's defense to the claims raised in the Underlying Complaint is attached hereto as Composite Exhibit "B". [1]

Thereafter, on March 6, 2013, the Bradfields, Winfree and Horgo entered into a Mediated Settlement Agreement ("MSA") that was subsequently ratified and confirmed by the circuit court on March 11, 2013, pursuant to a Consent Final Judgment ("Consent Judgment").   A copy of the MSA and Consent Judgment are attached to the Complaint filed in this cause as Exhibits "H" and "I", respectively.  (Docket No. 2)  The Consent Judgment awards the Bradfields $696,108.00 in damages caused to the Bradfield Home by Winfree's faulty workmanship.

Even though Mid-Continent had refused to undertake Winfree's defense to the Underlying Complaint on four (4) separate occasions, the Bradfields and Winfree's counsel provided Mid-Continent advance notice of the mediation conference scheduled for February 21,

---

[1] The letters are Bate Stamped with the prefix "MCC", which indicate that Mid–Continent produced the documents during the course of discovery as being genuine and authentic copies of the same.

2013, wherein the MSA was negotiated.  Mid-Continent replied to Winfree's counsel that "Mid-Continent will not be participating in the settlement process of this case."  (See February 25, 2013 Mid-Continent Letter attached to Composite Ex. "B" hereto.)

As indicated in Mid-Continent's November 1, 2012 declination letter and its own corporate representative's, Donald Eugene Hert, deposition testimony, Mid-Continent's refusal to undertake Winfree's defense of the Underlying Complaint was based upon its review of the allegations in and the exhibits attached to the Underlying Complaint <u>and</u> correspondence from the Bradfield's counsel not attached to the Underlying Complaint.  (Hert Depo. Trans. Pg. 67 – 69, 78) [2]

## <u>RELIEF REQUESTED</u>

The Bradfields seek a partial summary judgment under Count II for Declaratory Relief finding Mid-Continent breached its duty to defend Winfree.

## <u>LEGAL ARGUMENT</u>

## <u>MID-CONTINENT VIOLATED ITS DUTY TO DEFEND WINFREE</u>

**1.   <u>The Duty To Defend Is Determined *Solely* By The Allegations In The Complaint Against The Insured And Whether The Allegations "Fairly", "Potentially" Or "Reasonably" Bring The Suit Within Policy Coverage.</u>**

Although Mid-Continent has removed this case to federal court, this Court remains bound by Florida Supreme Court precedent when determining whether Mid-Continent breached its duty to defend Winfree against the claims raised in the Underlying Complaint that resulted in the Consent Judgment.  *See e.g., Ernie Haire Ford, Inc. v. Ford Motor Co.¸* 260 F.3d 1285, 1290 (11th Cir. 2001).  An insurer's duty to defend is determined <u>solely</u> by an examination of the

---

[2] Donald Eugene Hert ("Hert") appeared for his deposition on September 24, 2013, as the Corporate Representative for Mid-Continent.  Hert's deposition has been filed with this Court as Docket No. "26" and will be referred to herein as "Hert Depo. Trans. Pg. __."

allegations in and exhibits to the underlying complaint and the coverage provisions of the policy at issue. *See e.g. Colony Ins. Co. v. G & E. Tires & Serv., Inc.,* 777 So.2d 1034, 1036-37 (Fla. 1st DCA 2000); and *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.,* 358 So.2d 533, 536 (Fla. 1977).  Because Florida is a general pleading state, the duty to defend is more broader than an insurer's duty to indemnify and arises when the complaint alleged facts that "fairly and potentially" bring the suit within coverage.  *See e.g., Category 5 Mgmt. Group, LLC v. Companion Prop. & Cas. Ins. Co.,* 76 So.3d 20, 23 (Fla. 1st DCA 2011); *U.S. Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So.2d. 871 (Fla. 2007); *Jones v. Fla. Ins. Guar. Ass'n, Inc.,* 908 So.2d 435, 442-443 (Fla. 2005); *Burton v. State Farm Mutual Automobile Ins. Co.,* 335 F.2d 317, 321 (5th Cir. 1964) and *New Amsterdam Cas. Co. v. Knowles,* 95 So.2d 413, 415 (Fla. 1957).  Rather, as stated above, "so long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit."  *Id., see also Grissom v. Commercial Union Ins. Co.,* 610 So.2d 1299, 1307 (Fla. 1st DCA 1992).

 In *New Amsterdam,* the Florida Supreme Court ruled that New Amsterdam Casualty Company wrongly abrogated its duty to defend a nursing home against claims of negligence by an attendant.  New Amsterdam denied coverage and claimed that its policy had an exclusion for claims resulting from the rendering of "professional services."  The Court held:

> [W]hen we compare the allegations of the complaint filed against the appellees with the terms of the insurance policy, we discover no basis for the presumption that injury arose only from services of professional character. Moreover, the policy must be construed favorable to the holder. … If there actually existed a set of facts so different as to relieve the appellant from liability that would be developed only in an eventual trial.  But the appellant could not meanwhile decline any participation in the action.  On the contrary it was its duty to defend. (citations)

*Id.* (emphasis added); *See also Homes by Deramo, Inc. v. Mid-Continent Cas. Co.,* 661 F. Supp. 2d 1281 (M.D. Fla. 2009).

Similarly, the *Colony* court summarized Florida's duty-to-defend law as:

> **The insurer must defend if the allegations in the complaint <u>could</u> bring the insured within the policy provisions of coverage**. (citation omitted) If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit. (citation omitted). The duty to defend is separate and apart from the duty to indemnify and the insurer is required to defend the suit even if the true facts later show there is no coverage. (citation omitted) All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured. (citation omitted). So long as the complaint alleges facts that create **potential** coverage under the policy, the insurer **must** defend the suit.

*Colony,* 777 So.2d at 1036 (emphasis added).  *See also Category 5,* 76 So.3d at 23("**The duty to defend arises when the complaint alleges facts that *fairly* and *potentially* bring the suit within policy coverage even if the facts alleged are actually untrue or the legal theories are unsound.**")(emphasis added) and *Hartford Accident*, 466 F.3d at 1292.

In spite of the overwhelming case law to the contrary, Hert testified that Mid-Continent relied on extraneous letters from Plaintiffs' counsel not attached to the Underlying Complaint as a basis to deny coverage under an "ongoing operations" exclusion in the Winfree Policies.  (Hert Depo. Trans. Pg. 67, 69) Hert's testimony is memorialized  in Mid-Continent's November 1, 2012 declination letter, where it admitted that it based its denial of coverage on statements made in the Bradfields' counsel letters. (*See* Exhibit "B")  It was these non-filed letters that Mid-Continent improperly relied upon when it determined that coverage did not exist because the letters, in Mid-Continent's biased view, show the alleged cause of action was excluded by the policy provisions.  *Id.*  Such reliance on non-record materials when denying coverage constitutes a clear violation of and insurers' obligation to limit its determination <u>solely</u> to the allegations in and exhibits to the complaint.  *See e.g., Colony,* 777 So.2d at 1036 and *Category 5,* 76 So.3d 23.

Mid-Continent's own admission that it had to rely on non-record facts to conclude there was no coverage, conclusively confirms that the claims raised in the Underlying Complaint alleged facts that "fairly" and "potentially" brought the suit within policy coverage and that the claims "could" be covered by the policy provisions, especially when the Winfree Policies are construed favorable to Winfree.  Therefore, partial summary judgment must be granted.

> **2.   The Underlying Complaint And Its Exhibits Establish Facts That "Fairly", "Reasonably" And, At A Minimum, "Potentially" Bring The Lawsuit Within The Winfree Policies Coverages; Therefore, Mid-Continent Was Obligated To Undertake Winfree's Defense.**

Interpretation of an insurance contract is a matter of law, to be decided by the Court.  *See e.g., Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.,* 757 F.2d 1172, 1174 (11th Cir. 1985), citing, *Smith v. State Farm Mut. Auto. Ins. Co.,* 231 So.2d 193, 194 (Fla. 1970).  When construing the policy provisions, the basic cannons of contract construction apply, to wit: (1) the clear and unambiguous language in the policy is the best evidence of the parties' intent.  *See Rey v. Guy Gannett Pub. Co.,*  766 F. Supp. 1142, 1146 (S.D. Fla. 1991), citing, *Hurt v. Leatherby Ins. Co.,* 380 So.2d 432 (Fla. 1980); (2) the policy language will be given its plain meaning and construed in favor of the insured and against the carrier. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.,* 913 So.2d 528, 532 (Fla. 2005) and *New Amsterdam,* 95 So.2d at 415; (3) the policy must be read as a whole, and every provision given its full meaning and operative effect.  *See e.g.*, *Auto Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla. 2000); *Homes by Deramo, Inc. v. Mid-Continent Cas. Co.,* 661 F. Supp. 2d 1281 (M.D. Fla. 2009) and *U.S. Fire,* 979 So.2d at 877; and (4) exclusionary clause are read strictly and in a manner that affords the broadest possible coverage to the insured.  *Id., see also, Chandler v. Geico Indem. Co., 78 So.3d 1293, 1300 (Fla. 2011)*; and *Auto-Owners Ins. Co. v. E.N.D. Servs.,* 506 Fed. Appx. 920 (11th Cir. Fla. 2013)

("[E]xclusionary clauses are construed even more strictly against the insurer than coverage clauses.")

In the present case, Mid-Continent issued three CGL policies to Winfree, all of which contained the following pertinent provisions:

Section I – Coverages:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. **We will have the right and duty to defend the insured against any "suit" seeking those damages**. …

b. The insurance applies to "bodily injury" or "property damage" only if:

   a. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory".

   b. The "bodily injury" or "property damage" occurs during the policy period; and

   c. Prior to the policy period, no insured listed under Paragraph 1, of Section II … knew that the "bodily injury" or "property damage" had occurred in whole or in part. …

Section V, Paragraph 17 of the Winfree Policies defines "Property Damage" as:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Section V. Paragraph 13, defines "Occurrence" as: "An accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Finally, "Coverage Territory" as: "The United States of America (including its territories and possessions) Puerto Rico and Canada."[3]

## A. The Underlying Complaint "Fairly", "Reasonably" And At A Minimum "Potentially" Alleged That Winfree's

---

[3] Mid-Continent has stipulated that the alleged occurrence took place in the coverage territory and that it did not deny coverage or refuse to undertake Winfree's defense because the occurrence did not occur in the coverage territory. (Hert Depo. Trans. pg. 76)

**Defective Workmanship Caused Damage To The Structural Integrity Of The Bradfield Home, Which Faulty Workmanship Constitutes An "Occurrence" Under the CGL Policies Issued to Winfree.**

It is well settled that "faulty workmanship" by a contractor or its sub-contractors constitutes an "accident" and, thus, an "occurrence" under a post-1986 CGL Policy. *See Auto-Owners Ins. Co. v. Pozzi Window Co.,* 984 So.2d 1241, 1247 (Fla. 2008) and citations therein.

In *Pozzi,* the Florida Supreme Court re-affirmed its ruling in *J.S.U.B.* and held that water damage to a home from the defective installation of windows was a covered "occurrence" under an identical CGL policy as in the case at bar. The complaint in *Pozzi* alleged wrongful denial of coverage after the contractor entered into agreement with the window manufacturer, Pozzi, that assigned to Pozzi its claim for wrongful denial of insurance. Holding that defective workmanship was a covered "occurrence" under the CGL policy, the Court reiterated that:

> Our analysis of the term "occurrence" is controlled by our decision in J.S.U.B., in which we held that "faulty workmanship that is neither intended nor expected from the standpoint of the contractor can constitute an 'accident' and, thus an 'occurrence' under a post-1986 CGL policy. … Thus, as was the faulty soil preparation in J.S.U.B., the defective installation of the windows in this case, which the builder did not intend or expect, was an "occurrence" under the terms of the CGL Policies.

*Pozzi,* 984 So.2d at 1248.

Similarly, in the case *sub judice*, the allegations in the underlying complaint fairly, reasonably and at a minimum, potentially allege that the structural damage to the Bradfield's Home was caused by Winfree's defective workmanship. *See* Complaint, Para. Nos. 11, 13, 17, 24, 25, 31 and 32. As in *Pozzi*, the Underlying Complaint in the case at issue alleges improper installation of windows and resulting water intrusion and structural damages. *See* Complaint, Para. 13. Furthermore, Mid-Continent's own corporate representative admitted in deposition

testimony that, indeed, defective workmanship is a covered occurrence under Florida law.   (Hert Depo. Trans. Pg. 76)

Therefore, for purposes of summary judgment, the alleged defective workmanship that caused the structural damage to the Bradfield Home is a covered "occurrence" under the Winfree Policies.

> **B.  The Underlying Complaint "Fairly", "Reasonably" And At A Minimum "Potentially" Alleges That The Faulty Workmanship Caused "Property Damage" To The <u>Bradfield Home.</u>**

"Property damage" under a CGL policy includes "structural damage" to a residence caused by defective workmanship.  *See e.g., Pozzi,* 984 So.2d 1248; *J.S.U.B.*, 979 So.2d at 889; *Auto Owners Ins. Co. v. Tripp Const. Inc.,* 737 So.2d 600, 601 (Fla. 3d DCA 1999).

The *Pozzi* court, in reliance on its previous decision in J.S.U.B., reasoned that the damage to the residence was "property damage" within the meaning of the CGL policy because:

> In *J.S.U.B.,* we explained that other courts have also "recognized that there is a difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage.'"

*Pozzi,* 984 So.2d at 1248, citing J.S.U.B., 979 So.2d at 889, 891; *see also A*merisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 2012 (11th Cir. Fla. 2012)at

In the present case, the Bradfields' Underlying Complaint alleges that latent defective workmanship caused their home to suffer "construction defects that materially affect the *structural integrity* of the Bradfield home and pose an immediate and dangerous threat to the Bradfield's health and safety."   *See* Complaint, Para. No. 12.   In addition, the Underlying Complaint attaches the Endeavour Report that states roof leaks caused mold and damage to the

garage ceiling, a defective front balcony caused water intrusion into the home and damage to the garage ceiling; the defective installation of the pool bath has caused water intrusion causing damage to the home and the defective installation of the windows caused water intrusion and damage as shown in the dated black and white pictures attached to the Endeavour Report.

Thus, the allegations in the Underlying Complaint and its exhibits establish structural damage to the Bradfield Home, which "structural damage" constitutes "property damage" under the Winfree Policies.

Mid-Continent, however, contends that "property damage" was not specifically alleged in the Underlying Complaint. (Hert Depo. Trans. Pgs. 212 – 220)  This presumptuous conclusion was made in spite of the allegations in Paragraph 12, the attached Endeavour Report and the allegations that the defective workmanship affected the "structural integrity" of the Bradfield Home. (*Id.*)  Hert, however, admitted that the allegations in Paragraph No. 12 could mean a "myriad of things"; "I don't know what it (structural integrity) means"; "Structural integrity could have damaged other portions of the home"; and "it's unclear".  Regardless of Mid-Continent's uncertainty, it refused to undertake Winfree's defense even though it never undertook any effort to determine what was meant by the term "materially affect the structural integrity of the Bradfield Home."  (Hert Depo. Trans. pgs. 215, 216 and 220).

Moreover, Hert admitted that Mid-Continent denied coverage because the allegations did establish a clear case of coverage and that "**I don't believe inferences are – reach the level necessary under Florida law**." (Hert Depo. Trans. Pg. 211) (emphasis added)  Mid-Continent's limited and self-serving reading of the Underlying Complaint and purposed avoidance of any fair, potential and  reasonable inferences from the allegations in the Underlying Complaint and its exhibits is in direct conflict with the Florida precedent that holds an insurer has a duty to

defend against allegations that "fairly", "reasonably" or "potentially" bring a suit within coverage and that "**the insurer must defend if the allegations in the complaint *could* bring the insured within the policy provisions of coverage**." *Colony,* 777 So.2d at 1036; *see also* S*tate Farm Mutual Auto. Ins. Co. v. Universal Atlas Cement Co.,* 406 So. 2d 1184, 1188 (Fla. 1st DCA 1981), *rev. denied*, 413 So. 2d 877 (Fla. 1982)

In the present case, under any fair or reasonable reading of the Underlying Complaint and its exhibits, and taking into consideration Florida's general pleading practice, the Underlying Complaint states a claim for structural defects to the Bradfield Home caused by Winfree's defective workmanship.  Therefore, Mid-Continent had a duty to defend Winfree.

## C. The Underlying Complaint "Fairly", "Reasonably" And At A Minimum "Potentially" Alleges That The "Property Damage" Occurred During The Policy Period.

Section I, Paragraph b(b) of the Winfree Policies conditions coverage to "property damage" that occurs during the policy period.  There is no material issue of fact that the Winfree Policies covered a period from May 23, 2005 to January 3, 2008 and that Mid-Continent denied coverage under all three Winfree Policies.  (Composite Ex. B).  Nevertheless, Mid-Continent contends that the alleged "property damage" did not occur during any of the policy periods because the damage did not "manifest" until April 2012, more than four (4) years after the last policy expired. ".  (Hert Depo. Trans. pgs. 186, 187)

When determining when an "occurrence" happens, Florida law holds that the date property damage occurs is determined by the application of the "Manifestation Rule" and the "Injury-In-Fact Rule".  *See e.g., Mid-Continent Cas. Co. v. Siena Home Corp.,* 2011 U.S. Lexis 79132 (M.D. Fla., Ocala Div. 2011); *Axis Surplus Ins. Co. v. Contravest Const. Co.,* 921 F.Supp.2d 1388 (M.D. Fla. 2012).  The *Manifestation Rule* holds that coverage is triggered

when there is a "manifestation of the damage, not when the alleged negligence occurred or the

moment that the resulting injury or damage itself first occurred."  Mid-Continent is well aware of

the *Manifestation Rule* and its applicability to claims arising from water intrusion, as it was the

appellant in *Mid-Continent Cas. Co. v. Frank Casserino Const.,* 721 F.Supp.2d 1209 (M.D. Fla.

2011), wherein Judge Presnell held:

> That no one saw or "discovered" damage caused by water intrusion during
> the policy period is of no moment.  Under Florida's applicable 'trigger' theory
> and the unambiguous language of the CGL policies at issue here, the only relevant
> question is whether physical injury to the buildings manifested itself during the
> period of coverage.

*Id. at 1217; see also,  United Nat'l Ins. Co. v. Best Trust Co.* 2010 No. 09-22897-Civ,   2010
U.S. Dist. LEXIS 127976, 2010 WL 5014012 (S.D. Fla. 2010) (manifestation exists whenever
the property damage would have been visible 'upon a prudent engineering investigation" even if
removal of building components would be necessary to gain access to the damaged area.)

Likewise, the facts in the *Sienna Home* case are incredibly aligned with the facts of the

case at bar.  Specifically, in *Sienna Home,* Mid-Continent issued successive CGL policies during

2002 through 2003.  Mid-Continent moved for summary judgment and argued that the alleged

water intrusion caused by defective workmanship was not a covered occurrence because the

damage was not *discovered* until after the policies expired and; therefore, did not 'manifest'

during the coverage period.  *Id.* at 5.  The court ruled otherwise and held:

> [T]he "manifestation" of the "occurrence" of property damage, for
> purposes of determining coverage of the Mid-Continent policies in this
> case, is the time that such damage was discernible and reasonably
> discoverable either because it was an open and obvious or upon a prudent
> engineering investigation and **not the time of actual discovery where the
> two circumstances come about in sequence at different times.**

*Id.*

Similarly, Judge John Antoon II articulated Florida's *Injury-In-Fact Rule* in the *Axis*

*Surplus* decision wherein a motion for summary judgment was granted in a declaratory judgment

action seeking coverage for property damage resulting from construction defects under an identical CGL policy as Mid-Continent issued to Winfree. *See* 921 F.Supp.2d at 1341, 1346. The underlying complaint alleged the contractor negligently constructed homes that resulted in water intrusion and damage to their property and that the damages were not discovered until August 2008, the date the Plaintiffs received their expert report. The insurer argued that the latest of the policy periods had expired in July 2007 and; therefore, coverage was not triggered because the damage was not discovered during the policy period. *Id.* at 1346. The plaintiff argued that coverage is triggered not when the property damage is "discovered" but when the damage becomes "discoverable" and that based on the allegations in the complaint, the damages "may have been" discoverable during the policy period. *Id.* The *Axis Surplus* court, in its exhaustive recitation of Florida's coverage trigger theories, cited with approval the 11th Circuit's ruling in *Trizec* and held that the insurer had a duty to defend and reasoned:

> The *Trizec* court interpreted this language as requiring an injury-in-fact analysis, stating that "the damage itself . . . must occur during the policy period for coverage to be effective" and that "[t]here is no requirement that the damages 'manifest' themselves during the policy period" in order to trigger coverage. (citation omitted) Although the court did limit its holding to the specific terms of the policy before it, (refusing to determine whether the manifestation theory was correct in all situations, but holding that the theory was "incompatible with the language of the policy at issue"), that does not change the outcome of this case. As discussed, the policy at issue here and the one in *Trizec* are materially similar, and therefore, the analysis in *Trizec* is applicable here. Pursuant to the particular policy language at issue and the binding analysis of *Trizec*, this Court will apply the injury-in-fact trigger theory.

> Under Florida law, whether there is a duty to defend is determined by the facts and legal theories alleged in pleadings against the insured. (citation omitted). "The insurer must defend when the complaint alleges facts which fairly and potentially bring the suit within policy coverage." (citation omitted). The Underlying Complaint **suggests** that the damage **occurred at some point after the buildings were completed but before**

> **the experts inspected the property.** This time period includes the time
> that Axis's policies were in effect, and therefore Axis has a duty to defend
> the Insureds in the underlying suit.

*Axis Surplus,* 921 F. Supp.2d at 1346, 1347 (emphasis added)

Similarly, in the case at bar, there is no question of law or fact that Mid-Continent had a duty to defend Winfree, regardless of which trigger theory is applied.   An analysis of the Underlying Complaint, which is the sole determinative factor of an insurer's duty to defend, establishes that the damages "*may have been discovered*" during the policy period and "*suggest*" that the damages did in fact occur during the policy period.  Specifically, Paragraph No. 14 of the Underlying Complaint alleges that the defects were first discovered in April 2012 after receipt of the Endeavour Report, which report was attached to the Underlying Complaint. As in *Axis Surplus,* the Endeavor Report identified defects and damages to the Bradfield Home, and included copies of the black & white photographs that bear a date stamp of September 7, 2007, of which Mid-Continent acknowledged receipt prior to its denial of coverage.   (Hert Depo. Trans. pg. 78).   The pictures show the existence of property damage that falls within the last Winfree policy period that did not expire until January 3, 2008.  The pictures show damage that pre-existed the taking of the pictures and "*suggest*" that the property damage may have been discoverable during any one of the three Winfree Policy periods and there is nothing in the Underlying Complaint to refute that possibility.   Therefore, as in the *Axis Surplus*, the Bradfield's allegations "***are sufficient to determine***" that Mid-Continent had a duty to defend Winfree in the underlying suit. *Id* at 1347 (emphasis added)

Therefore, there is no question of fact or law that the allegations and exhibits to the Underlying Complaint "fairly", "reasonably" and "potentially" allege property damage that

occurred within all three Winfree Policy periods and that Mid-Continent had a duty to defend Winfree.

**3.  The Exclusions In The Winfree Policies Do Not Excuse Mid-Continent From Undertaking Winfree's Defense In The Underlying Lawsuit.**

    **A.  Mid-Continent Has Not And Cannot Meet Its Burden Of Proof That The Exclusions In The Winfree Policies Negate <u>Its Duty To Defend</u>.**

Florida law applies a burden-shifting approach for matters involving questions of insurance coverage and exclusions.  Initially, the burden is on the insured to establish that an insurance policy covers a claim against it; however, once a claim "potentially" triggers coverage, the burden shifts to the insurer to prove an exclusion applies to the coverage."  *See e.g., Castillo v. State Farm Fla. Ins. Co.*, 971 So.2d 820, 824 (Fla. 3d DCA 2007); *East Florida Hauling, Inc. v. Lexington Ins. Co.*, 913 So.2d 673, 678 (Fla. 3d DCA 2005); *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997) and *Hudson Ins. Co. v. Double D Mgmt. Co., Inc.,* 768 F. Supp. 1542 (M.D. Fla. 1991).  If the exclusion could be read as both providing and excluding coverage, then the exclusionary clause must be construed in favor of coverage.  *Id.*

In *Castillo,* the Florida appellate court reversed a summary judgment in favor of an insurer and ruled that the insurance carrier did not prove the application of an exclusionary clause in the policy.  The Court reiterated the burden shifting rule for exclusions to coverage and held:

    **In Florida, '[w]hen an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast *solely* and *entirely* within the policy exclusion and are subject to no other reasonable interpretation**.'

*Castillo,* 971 So.2d at 824, quoting, *Northland Cas. Co. v. HBE Corp.,* 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001)(emphasis added).

In the present case, Mid-Continent did not assert any "exclusion" to the coverage provisions until its third declination letter dated November 1, 2012, wherein for the first time it alleged that Exclusions J5 and J6, F-2, K, M & N and two endorsements that could exclude coverage.  As discussed below, the asserted exclusions and endorsements do not excuse Mid-Continent from undertaking Winfree's defense to the claims raised in the Underlying Complaint.

### B. Exclusions J5 And J6 Do Not Apply Because Property Damage *May* Have Occurred After Winfree Had Completed Its Operations And Not During Winfree's <u>Ongoing Operations.</u>

Mid-Continent testified that coverage for the underlying claim could be excluded by exclusions J5 and J6 if the property damage occurred during Winfree's "ongoing operations." (Hert Depo. Trans. pg. 58 – 61, 131 – 134, 140, 142)

In this regard, it is undisputed that all the Winfree Policies contain identical J5 and J6 exclusions.  Furthermore, Mid-Continent concedes that exclusions J5 and J6 <u>only</u> apply to ongoing operations and not after the work required under an insured's contract is completed. (*Id.*)

In determining whether the claims raised in the Underlying Complaint are cast *solely* and *entirely* within the J5 and J6 exclusions and are not subject to any other reasonable interpretation, Mid-Continent must show that the claims can *only* be construed to establish that the "property damage" occurred during ongoing operations.  *See Castillo,* 971 So.2d at 824.  This burden Mid-Continent cannot satisfy, because the Underlying Complaint does not state what work Winfree was to complete under its contract or when Winfree completed its work.  Furthermore, Mid-Continent admits that it "has no facts that either support or do not support that it (the property damage) happened during the ongoing operations" and that  it does not know what the scope of

Winfree's work was or what responsibilities Winfree undertook or whether other subcontractors were working under Winfree's supervision. (*Id.* at 63 – 65, 139, 147)  It naturally follows that if Mid-Continent does not know what "responsibilities" Winfree had, then it cannot state with certainty that Winfree's operations were completed or ongoing when the property damage occurred.  Thus, Mid-Continent cannot prove that exclusions J5 or J6 conclusively apply to the claims raised in the Underlying Complaint.

Moreover, Mid-Continent admits that it construed the Underlying Complaint and exhibits to allege that the "property damage" occurred <u>after</u> Winfree's operations were completed and not subject to Exclusions J5 or J6 because the damage would be covered by the "Products Completed Operations Hazard" ("PCOH") coverage provision in Section V, Paragraph 16 of the Winfree Policies.  (*Id.* at 39 - 41)

The PCOH coverage provision in all three Winfree Policies provides insurance coverage for:

> [A]ll … "property damage" occurring away from premises you own or rent and arising out of … "your work" , except:
>
> (1) Products that are still in your physical possession; <u>or</u>
>
> (2) Work that has not yet been completed or abandoned.  However "your work" will be deemed completed at the earliest of the following times:
> (1) **When all the work called for in your contract has been completed**.

(emphasis added)

In construing the PCOH provision, Mid-Continent admits that it cannot point to any allegation or exhibit attached to the Underlying Complaint that states when Winfree completed its operations or the terms of Winfree's contract with Horgo. (Hert Depo. Tran. ppg. 42, 63 – 67, 139)

Without any basis upon which it could determine when Winfree's work would have been completed under its contract with Horgo, Mid-Continent, contrary to Florida law, relied on letters between Bradfield's counsel and its adjuster that are "outside the allegations in the complaint" when concluding that the damages occurred after Winfree's work was completed. (*Id*. at 67 – 69)  At the very least, Mid-Continent has taken inconsistent positions of whether exclusions J5 and J6 exclude coverage, which only serves to show that the claims raised in Underlying Complaint do not *solely* and *entirely* fall within the J5 and J6 exclusions and are not subject to any other reasonable interpretation. Therefore, Mid-Continent had a duty to defend Winfree.

### C. Exclusion "F-2" Does Not Apply Because The Underlying Complaint And The Exhibits Thereto Do Not Allege Any "Pollutants".

Mid-Continent also relies on exclusion "F-2", which excludes coverage for the actual or threatened effects of "pollutants.  Mid-Continent testified, however, that the only possible applicability of the "F-2" exclusion is the Bradfields' claim for mold clean up because "mold is a toxin or a pollutant." (Hert Depo. Trans. pg. 189)  Assuming, without conceding that mold could be a "pollutant", the Underlying Complaint did not seek damages *solely* for mold clean up, but also included claims for structural defects to the Bradfield Home unrelated to mold. Therefore, Mid-Continent had a duty to defend the entire case.  *See Colony,* 777 So.2d at 1036, and *Higgins v. State Farm Fire & Cas. Co.,* 894 So.2d 5, 31 (Fla. 2004).

### D. Exclusion "K" Does Not Apply Because The Underlying Complaint Does Not Allege Damages To Winfree's "Product".

Mid-Continent also refused to undertake Winfree's defense under the misguided belief that exclusion "K" exempts coverage.  Exclusion "K" applies to damages to Winfree's

"product"; however, the term "your product", has been found <u>not</u> to apply to general contractors who provide construction services.  *See New Amsterdam,* 169 So. 2d 884, *see also, Miller Electric Co. v. Employers' Liability Assurance Corp.,* 171 So. 2d 40, 45 (Fla. 1st Dist. 1965)(exclusionary clauses related to "products" apply if the insured is a manufacturer of products and has no application in those instances where the insured is a general contractor engaged in rendering services and not engaged in the manufacture of products.)

The allegations in the Underlying Complaint do not allege that Winfree manufactured any "product",  rather they only allege that Winfree engaged in faulty workmanship that caused structural damage to the Bradfield Home.   Therefore, because the Underlying Complaint does not allege property damage to a "product", exclusion "K" does not apply.

### E. Exclusion "M" Does Not Apply Because The Underlying Complaint Does Not Allege Claims to <u>"Impaired Property"</u>.

 Mid-Continent's reliance on exclusion "M" is also unavailing, as the Underlying Complaint does not make any claims for damages to "impaired property", which is also a defined term under the Winfree Policies.  Mid-Continent admitted that it knows of no facts that would substantiate the application of exclusion "M" to the claims asserted in the Underlying Complaint. (Hert Depo. Trans. pg. 107 -114)  Therefore, exclusion "M" is no basis for finding that Mid-Continent did not have a duty to defend Winfree..

### F. Exclusion "N" Does Not Apply Because The Underlying Complaint Does Not Allege Claims Related To The <u>Recall Of Products, Work Or Impaired Property.</u>

Exclusion "N", which relates to withdrawn or recalled products, is no basis to deny undertaking Winfree's defense and Mid-Continent has admitted that at best, only a portion of the

damages claimed in the Underlying Complaint could relate to exclusion "N".  (Hert Depo. Trans.

pgs. 116 – 118)  As with the other exclusions, the Underlying Complaint makes no allegations of

any withdrawn or recalled product or work.  Therefore, because the Underlying Complaint does

not allege claims *solely* and *entirely* within exclusion "N", Mid-Continent cannot be excused

from undertaking Winfree's defense to the entire suit.

> **G. The Mold Endorsement, Does Not Exonerate Mid-Continent From Its Duty To Defend Winfree From The <u>Claims Alleged In The Underlying Complaint.</u>**

Assuming, but not agreeing, that the Mold Endorsement to the Winfree Policies applies

to some of the structural damages sustained to the Bradfield Home, the exclusion would only

apply to the duty to indemnify, not the duty to defend, because the Underlying Complaint alleges

claims for non-mold structural damage to the Bradfield Home.   Mid-Continent had a duty to

defend Winfree from all of the claims raised in the Underlying Complaint.  *See  Colony,* 777

So.2d at 1036.

> **H. Endorsement CG2294 Was Not Part Of The First Winfree Policy And; Therefore, Cannot Be Deemed A Basis To Deny Coverage Under The First Winfree <u>Policy.</u>**

Lastly, Mid-Continent relies on Endorsement CG2294, which only applies to the last two

Winfree Policies that were in effect from May 23, 2006 through January 3, 2008.  However, for

because the first Winfree Policy did not contain the endorsement, Mid-Continent cannot rely on

the endorsement to shield itself from its duty to defend the claims alleged in the Underlying

Complaint.

As a point of reference, endorsement "CG2294" removes the exemption language in exclusion "L" in the last two Winfree Policies.  Exclusion "L" in the first Winfree Policy, which includes the exemption language excluded by the endorsement, excludes coverage to:

l. **Damage to Your Work**

> "Property damage" to "your work" arising out of it or any part of it and included in the "Products completed operations hazard."
>
> **This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.**  (emphasis added)

Thus, in order for endorsement "CG2294" to override Mid-Continent's duty to defend Winfree, Mid-Continent must prove that the allegations in and the exhibits to the Underlying Complaint are cast *solely* and *entirely* within the policy endorsement and are subject to no other reasonable interpretation.  *See e.g., Castillo,* 971 So.2d at 824, quoting, *Northland Cas. Co.,* 160 F. Supp. 2d at 1359.  For the reasons stated below, Mid-Continent cannot meet this burden and; therefore, partial summary judgment must be granted.

First, there is no question of fact that endorsement "CG2294" was not part of the first Winfree Policy that covered the time between May 23, 2005 and May 23, 2006.  (Hert Depo. Trans. pg. 24); See also Declarations to Winfree Policies attached hereto as Exhibit "C".

Second, the Underlying Complaint does not allege any facts as to the date of when the property damage occurred and Mid-Continent has admitted that it does not know when the alleged property damage occurred.  (Hert Depo. Trans. pg. 43, 106, 147)

Third, the allegations in and the exhibits to the Underlying Complaint do not allege any facts of what Winfree's scope of work was or when it completed its operations.  (*Id.* at 63 – 65, 139)  Therefore, because Mid-Continent does not know what "responsibilities" Winfree had, it

cannot state with certainty that Winfree's operations were completed or ongoing when the property damage occurred.

<u>Fifth</u>, the allegations in and exhibits to the Underlying Complaint, at the minimum suggest that the property damage occurred sometime before May 23, 2006, which was before the first Winfree Policy expired.  Specifically,

1. The Underlying Complaint does not state when Winfree completed its work under its "contract" and whether that occurred before the expiration of the first Winfree Policy period.   (Hert Depo. Trans. ppg. 63 – 65, 139)   Mid-Continent never received a copy of Winfree's contract with Horgo and just assumed, based on other claims it handled in Florida that, because Winfree pulled the permit, Winfree had to stay on the job until someone else takes the permit over.  (*Id.* at 139)  The Contract attached to the Underlying Complaint between Horgo and the Bradfields however states that Horgo was responsible for the construction and for "substantially complet[ing] the construction of the home." (Exhibit "A" to Underlying Complaint, Paras. 4 & 5) Because Winfree's scope of work is not alleged in the Underlying Complaint, with the exception of the allegations that Winfree pulled the permit and owed a duty to Bradfield to construct the home in accordance with minimum industry standards, Mid-Continent cannot say with certainty that Winfree had to stay on the permit until someone else took over the permit.

2. The building permit application attached to the Underlying Complaint also states on its face that the "permit will become null and void if a satisfactory inspection is not completed within six (6) months." (Ex. D. to Underlying Complaint)  In this regard, the permit was issued on November 1, 2005, and therefore, expired on its face on May 1, 2006 unless a "satisfactory inspection" was completed.  The Underlying Complaint is wanting of any allegations that suggest inspections were completed or that the permit did not expire on May 1, 2006.  In fact, the opposite is true.  The Underlying Complaint attaches a second building permit application signed by Richard Higo as "Contractor" on December 3, 2006.  The second application, signed by a different' "contractor", suggests that the Winfree permit expired prior to December 3, 2006.  These facts suggest, at the minimum, that Winfree had completed its work before December 3, 2006, and possibly before the expiration of the first Policy Period, which was May 23, 2006. Because the property damage could have occurred before the expiration of the first Winfree Policy and after Winfree had completed its operations, the property damage would be covered under the PCOH provision and not excluded by endorsement "CG2294."

As in the case of all duty to defend cases, the determination of one's duty to defend is not premised on whether the facts ultimately proved at trial show there is no coverage, but only whether the Underlying Complaint asserts claims that could possibly place the claims within

coverage. In the instant case,  the Underlying Complaint could be read to allege that the property damage occurred after Winfree completed its operations and before May 23, 2006, so that the claims would not be excluded by any exclusion or endorsement contained in the first Winfree Policy.  (Hert Depo. Trans. pg. 144)

Therefore, Mid-Continent had a duty to defend Winfree and partial summary judgment must be granted.

## CONCLUSION

Mid-Continent breached its duty under Section I, Paragraph 1 of the Winfree Policies to defend Winfree from the claims raised in the Underlying Lawsuit. Mid-Continent has not and cannot satisfy its burden of proof that the Underlying Complaint is cast *solely* and *entirely* within any policy exclusion or endorsement.  Therefore, as a matter of law, the Bradfields are entitled to a partial summary judgment declaring that Mid-Continent breached its duty to defend Winfree against the claims raised in the Underlying Complaint.

Respectfully submitted this 4th day of November, 2013.


_____
EDWARD P. JORDAN, II
Florida Bar No. 602711
Edward P. Jordan, II, P.A.
1460 East Highway 50
Clermont, Florida, 34711
Telephone:  352-394-1000
Attorney for Plaintiffs
pleadings@epjordanlaw.com


## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing Motion For Partial Summary Judgment has been furnished via by Email to: Melissa A. Gillinov, Esq. at mgillinov@hinshawlaw.com Ronald L. Kammer Esq., at rkammer@hinshawlaw.com; EFernandez@hinshawlaw.com, ejewett@hinshawlaw.com, dphangsang@hinshawlaw.com, nbroche@hinshawlaw.com on this 4th day of November, 2013.

_____

Edward P. Jordan II

Litigation/Bradfield/Mid-Continent/Mtn. Summary Judgment.doc