UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOSEPH BRADFIELD and PATRICIA         Case No. 5:13-cv-00222-WTH-PRL
BRADFIELD, citizens of Florida,

        Plaintiffs,

vs.

MID-CONTINENT CASUALTY COMPANY,
a foreign corporation,

        Defendant.
_____/

**MCC'S REPLY IN SUPPORT ITS DISPOSITIVE MOTION ABOUT WINFREE HOMES[1]**

This case involves a consent judgment that was entered into following a mediation. Mr. Winfree, the president of Winfree Homes, candidly admits he doesn't believe the settlement agreement he signed is fair, that he has seen no documents justifying the $671,050 in the settlement agreement and he threw Mid-Continent Casualty Company ("MCC") "under the bus." *See* P. 98, ln. 22 of the Deposition of Mr. Winfree, attached as Exh. "K." He is correct and for the reasons stated below, MCC has no duty to indemnify Winfree Homes.

**I.    MCC's Response To The Bradfields' Statement Of Alleged Facts**

Federal Rule of Civil Procedure 56(e) required the Bradfields' to rebut all of allegations in MCC's Statement of Undisputed Material Facts. The Bradfields did not and instead repasted their dispositive motion's statement of allegedly undisputed facts. Since the Bradfields, unlike MCC, failed to comply with Rule 56(e), the Court can consider MCC's Statement of Undisputed Material Facts as undisputed. *See* Fed. R. Civ. Pro. 56(e)(2); *Jones v. Gerwens*, 874 F.2d 1534, 1537 n. 3 (11th Cir. 1989) (holding plaintiffs' failure to controvert defendants' statement of undisputed facts

---

[1] MCC files this Reply pursuant to the Court's June 18, 2014, Order.

with record citations constituted an admission that such facts were undisputed). MCC responds to the Bradfields' "facts" by incorporating its answers to the statement of undisputed facts filed with MCC's response to the Bradfields' dispositive motion. *See* [D.E. 32].

## II. The Bradfields Misstate Their Burden

The Bradfields assert MCC must either "pay the judgment or have the judgment set aside" and "[b]ecause MCC breached its duty to defend Winfree, the only issue before the Court is whether the MSA and the resulting Consent Judgment were unreasonable or procured through fraud or collusion." [D.E. 71, P. 5 and 7]. But, Florida law requires the Bradfields to not only prove a duty to defend existed, but to also establish coverage exists for every item in the consent judgment and that the dollar amount for each item is reasonable and the consent judgment is not the product of fraud or collusion. *See Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 2013 WL 4472288 (11th Cir. 2013) and *Trovillion Const. & Dev., Inc. v. Mid–Continent Cas. Co.*, 2014 WL 201678 (M.D. Fla. 2014).

If the amount of a consent judgment is unreasonable or tainted with bad faith it cannot be enforced against an insurer and an insurer has no liability to pay any part of the insured's settlement. *Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So. 2d 589, 592 (Fla. 2d DCA 1984). "Evidence of both liability and damages are relevant…due to the risk that the 'settlement of liability and damages' in a settlement agreement 'may have little relationship to the strength of a plaintiff's claim' where the insured by never be obligated to pay and has little to lose if he stipulates to a large sum with the plaintiff." *Id.* The Bradfields' failure to appreciate their burden is the reason they failed to allocate or to establish that each item of the consent judgment was reasonable.

### 1. The Agreement Is Unreasonable Because Signatories Admit They Lack Knowledge Regarding Material Issues

After the opening presentations concluded Mr. Winfree was "kind of put out in [the reception room]" without an explanation. Exh. K. P. 20, ln. 13-16. Mr. Winfree is "positive" he

stayed there for "five or six hours" and did not leave until his lawyer said he and Mr. Higo of Horgo Signature Homes could go home. Exh. K, P. 18, ln. 9-16, P. 21, ln. 12-15, P. 43, ln. 11-18, P. 77, ln. 14-23, P. 112, ln. 15-25 and P. 78, ln. 10-21. Before signing the agreement Mr. Winfree was never provided with such critical items such as information about the Bradfields' mortgage payments, HOA fees, or project management fees. Exh. K, P. 60, ln. 2-6, ln. 17-20, P. 61, ln. 16-22, P. 63, ln. 7-P. 61, ln. 1. Nor was he ever informed of Derelle Inc.'s involvement. Exh. K, P. 64, ln. 8-13. Mr. Winfree also lacks knowledge whether the agreement contains amounts for items mentioned in Mr. Swidler's $671,050 estimate like landscaping, moving expenses, the air handler, windows, the pool bath, the pool deck, the front balcony, living expenses or storage costs. Exh. K, P. 58, ln. 4-18, P. 59, ln. 23-P. 61, ln. 9 and P. 74, ln. 24-P. 76, ln. 13. His lack of knowledge extends to why the agreement says his work was done by May 20, 2006. Exh. K, P. 51, ln. 22-P. 52, ln. 4. Mr. Winfree admitted he does not believe the agreement represents a fair settlement and that for $671,050 "you could tear the whole house down, throw it in the garbage and rebuild it." Exh. K, P. 62, ln. 15-21, P. 86, ln. 6-9. [D.E. 64-12, P. 3].

Mr. Higo also testified that before signing the settlement agreement he was not provided with any information about the Bradfields' living expenses, homeowners' association fees, mortgage payments or taxes. Exh. G, P. 42, ln. 23- P. 43, ln. 1 and P. 44, ln. 10-25. Mr. Higo never asked about this information because it was not his concern. Exh. G, P. 50, ln. 8-15. When asked about a project management fee, Mr. Higo said he was never told estimates were prepared containing a project management fee. Exh. G, P. 47, ln. 21-23. He consequently had no idea how the $91,237 project management fee was calculated or what it represents. Exh. G, P. 48, ln. 23-P. 49, ln. 9. Mr. Higo first saw the number $671,050 after the mediation, does not know how it was calculated and never asked questions about it. Exh. G, P. 30, ln. 20-24, P. 31, ln. 23-25, P. 32, ln. 1-4. Mr. Swidler also attended the mediation and admits he has no idea how the total number in the

3

consent judgment was arrived at and does not recall anyone mentioning $671,050 during the mediation. Exh. L, P. 517, ln. 20-P. 518, ln. 12.

Regarding Mrs. Bradfield, she admitted under oath not even knowing Winfree Homes was a defendant. Exh. J, P. 213, ln. 16-24 and P. 214, ln. 16-P. 215, ln. 9. She simply believes no fraud or collusion occurred because the mediation contained a mediator and MCC had notice of the mediation. Exh. J, P. 219, ln. 15-21. Dr. Bradfield also never asked about the agreement's terms and does not know what work is included in the agreement. Exh H, P.174, ln. 18-25. [D.E. 64, P. 4]

### 2. The Settlement Agreement Is Unenforceable Because It Assumed 100% Liability And Included Attorney's Fees Which Were Not Recoverable

On page nine of their Response, the Bradfield's contend they could have proven at trial 100% of their highest estimate; however examining the evidence about the roof unquestionably refutes that argument. As part of the settlement agreement the Bradfields obtained an assignment from Winfree Homes and Horgo Signature regarding claims against the roofer, Pride USA. The Bradfields then sued Pride USA by filing a strikingly similar complaint as they filed against Winfree Homes which attached the same Endeavor Report which concluded that Pride USA failed to install the roof in compliance with the building code and manufacturer specifications. Exh. N at P. 3-5. In contrast to Winfree Homes' counsel, Pride USA's counsel hired an expert and conducted discovery. The Bradfields' counsel admitted under oath his clients eventually settled the roof claim with Pride USA for $30,000, a number far less than contained in Swidler's (or any expert's estimate) because the Bradfields could not prove the roof damaged the house. *See* Exh. E, P. 58, ln. 5-17. *See also* [D.E. 64, P. 3]. The only reasonable inference is that if Winfree Homes' counsel had taken even minimal steps to defend his client, which he did not, that the Bradfields would have experienced similar proof problems regarding the other areas the Bradfields contend are damaged. As the Eleventh Circuit held in *American Pride*, if a consent judgment's amount is too high it is unenforceable. *See American Pride*, 534 Fed. Appx. at 928.

4

Their Response contends the fees were included because the "insured's attorneys' fees are recoverable." [D.E. 71, P. 15]. However, their counsel admitted under oath the fees were incurred by the Bradfields and he provided multiple baseless reasons regarding entitlement. Exh. I, P. 131, ln. 21-P 133, ln. 21. He initially testified entitlement exists based on the contract between Horgo Signature Homes and the Bradfields, Section 57.105, Section 558.004 and because Winfree Homes allegedly did not comply with Florida Codes. Exh. I, P. 136, ln. 17-19; P. 138, ln. 22-P. 140, ln. 7; P. 147, ln. 17-P. 148, ln. 7 and P. 148, ln. 17-P. 149, ln. 7. After doing research during the continuation of his July 2014 deposition's lunch break, he then said the fees were recoverable because Horgo Signature was unlicensed. Exh. I, P. 177, ln. 16-P. 178, ln. 9.

None of these reasons require MCC to indemnify Winfree Homes for the Bradfields' attorney's fees. The settlement agreement says a genuine copy of the contract is attached and which Dr. Bradfield said is complete, lacks an attorney fee provision. [D.E. 25-1]. Exh. F, P. 8, ln. 19-P. 9, ln. 1. [D.E. 64-12, P. 1]. Regarding the statutes, the Bradfields never served a 57.105 letter, 558.004 does not provide an entitlement to fees and the statute their counsel discovered during his deposition's lunch break pertains to unlicensed contractors but Mr. Winfree of Winfree Homes was licensed. Exh. I, P. 148, ln. 1-7. [D.E. 64-12, P. 2]. Those statutes are consequently inapplicable and there is no basis for the Bradfields to obtain fees for litigating against Winfree Homes.[2] Therefore the amount of the settlement agreement is unreasonable and unenforceable.

### 3. The Settlement Agreement Is Unreasonable Because The Drafters Intentionally Drafted It With The Intent To Create Coverage

Florida law is clear that attempts to harm the insurer in a consent judgment can be evidence of bad faith. Here the settlement agreement contends that certain work was performed on or before May 20, 2006. [D.E. 64-12, P. 3]. However, Lake County's records state many of those items were

---

[2] The settlement agreement failed to allocate the attorney's fees between Winfree Homes and Horgo Signature and for that additional reason MCC is entitled to summary judgment.

actually completed after May 20, 2006. *See* [D.E. 67, P. 2-5]. Mr. Winfree and Mr. Lougheed, who isone of the Bradfields' experts, also testified that Winfree Homes did work after May 20, 2006. [D.E. 67, P. 2-6]. As this Court is aware, the Bradfields have asserted MCC's endorsement that excludes coverage under Winfree's policies for work performed by subcontractors does not apply because it was not part of the first Winfree policy, which ended on May 23, 2006. The only plausible reason why May 20, 2006, was included in the settlement agreement was because the Bradfields wanted to defeat MCC's ability to rely on CG2294 even though no evidence supports their reliance on that date.

**III.     The Bradfields' Arguments Regarding Reasonableness Are Baseless**

Mr. Winfree's counsel took no depositions, propounded no discovery and never hired an expert. Since the Bradfields took no steps to determine if the $671,050 was reasonable, that leaves the Bradfields with Mr. Lougheed's and Mr. Swidler's testimony to support their argument that the consent judgment was reasonable. As to why the Bradfields cannot rely on either expert, MCC incorporates its motions in limine about Mr. Lougheed and Mr. Swidler. [D.E. 83 and 88]. Based on MCC's motion in limine about Mr. Swidler, his estimate (which is the only one that considered the interior and exterior of the home) does not establish the settlement agreement is reasonable because his calculations are unreliable, contain mathematical flaws and lack scientific support. *See* [D.E. 83]. Mr. Swidler even admitted not knowing under oath why his calculations had a $58,000 discrepancy and then completed an after the fact analysis at the continuation of his deposition to try and explain the discrepancy. But, as explained in the motion in limine, Mr. Swidler contended that when calculating his management fee's number in 2012 he relied on an estimate prepared on December 13, **2013**, and Mr. Lougheed's May of **2013** estimate. *See* [D.E. 83, P. 17-19]; [D.E. 83-4] and [D.E. 88, P. 6, 14]. Mr. Swidler's management fee is also unreasonable because, as stated in MCC's dispositive motion, Mr. Clark already included a management fee in his estimate and Mr.

6

Swidler incorporated that fee into his estimate and then arbitrarily added an additional fee, which is unsupported by any industry standard. [D.E. 64]. Mr. Swidler adding his management fee on top of Mr. Clark's is additional evidence why the consent judgment is unenforceable.

Another problem with Mr. Swidler's calculations is his testimony about the $68,000 in living expenses. [D.E. 83, P. 24-25]. The Bradfields, the only people with firsthand knowledge of these expenses, did not calculate and cannot explain how Mr. Swidler calculated those expenses. Exh. J, P. 164, ln. 5-14 and P. 165, ln. 9-10 and Exh. H, P. 151, ln. 12-20 and P. 178, ln. 21-23. The Bradfields did not produce documents substantiating the $68,000, nor did Mr. Swidler provide evidence during his testimony to support the dollar amounts for every item allegedly included in the moving/living expenses. For example, Mr. Swidler testified he included in his calculation an unspecified amount for a maid and he admits not knowing how much the Bradfields paid for a maid before entering into the settlement agreement. [D.E. 83-1, P. 99, ln. 14-19].

The Bradfields also cannot rely on Mr. Higo's testimony to justify whether the settlement agreement is reasonable. Mr. Higo, who is not a licensed general contractor, was asked by the Bradfields' counsel to improperly assume numerous hypothetical situations but the Bradfields' Response fails to state he provided his testimony after making those assumptions. Exh. D, P. 9, ln. 2-7, P. 191, ln. 2-P. 192, ln. 5. As stated in MCC's dispositive motion, Mr. Higo did not know what is wrong with the house, did not inspect the house after the Bradfields' sued Horgo Signature and does not know what work is contained in the agreement.[3] Mr. Higo also testified that he is not a licensed plumber, electrician or HVAC and since he was not "schooled" in those areas he wouldn't know if there were problems. Exh. D, P. 194, ln. 1-15. Since his "sole basis" for believing the house needed $671,050 in work was the estimate itself and he has no experience or firsthand

---

[3] *See* [D.E. 64, P. 5 and 25] and Exh. D, P. 133, ln. 16-18, P. 134, ln. 5-8, P. 138, ln. 23- P. 139, ln. 2, and ln. 10-15, P. 140, ln. 10-21, P. 141, ln. 19-P. 142, ln. 2, P. 148, ln. 7-11 and P. 194, ln. 1-15. Exh. G, P. 112, ln. 4-P. 113, ln. 20. [D.E. 64, P. 5-6].

knowledge, his testimony does not create an issue of fact. Exh D. P. 135, ln. 18-20.

The Bradfields also erroneously contend the settlement agreement is reasonable because it allegedly does not contain an amount for unforeseen property damage. [D.E. 71, P. 12]. Although Mr. Swidler's estimate lacks a dollar amount for unforeseen items, Mr. Swidler testified he incorporated Mr. Clark's estimate into his own estimate without changing Mr. Clark's numbers. *See* [D.E. 83-1, P. 102]. Mr. Clark's estimate included $42,000 for unforeseen work because Mr. Swidler asked him to add an amount for unforeseen work. *See* P. 51, ln. 11-P. 53, ln. 18 and P. 54, ln. 9-16 of the Deposition of Cecil Clark, attached as Exhibit "B." Furthermore, even Mr. Swidler's March of 2014 chart states Mr. Swidler included Mr. Clark's $42,000 in unforeseen items. [D.E. 73, P. 48-49]. *See generally* MSI 123 (listing Derelle's unforeseen as $42,000), attached as Exhibit "C." The Court should therefore reject their argument that the settlement agreement is reasonable because the Bradfields allegedly assumed the risk of paying for unforeseen damages.

**IV.   The Bradfields Have Not Allocated Between Covered And Uncovered Amounts**

Page three of the settlement agreement incorporates Mr. Swidler's report and refers to the items in his report as "latent defects." [D.E. 64-12, P. 3]. Page four of the agreement then states the amount to repair damages caused by the "latent defects" is $671,050. [D.E. 64-12, P. 4]. Thus, the parties stipulated that the Endeavor Report's items, which include numerous uncovered construction defects, is part of the consent judgment. *See generally* [D.E. 64-13, P. 6].

The Bradfields argue they can allocate between the consent judgment's covered and uncovered damages because of an unspecified document referred to in the settlement agreement as the second Exhibit B. [D.E. 64-12, P. 4], [D.E. 71, P. 14]. In reality, no estimates allocate between covered and uncovered damages, the Bradfields never filed an Exhibit B attached to the settlement agreement in the state court or attached to their Complaint in this action and none of the parties know what document is referred to as the agreement's second Exhibit B. Exh. G, P. 75, ln. 4-19.

8

Exh. H, P. 188, ln. 24-P. 189, ln. 12. Exh. J, P. 191, ln. 24-P. 192, ln. 14; Exh. K, P. 73, ln. 8-21.

Despite those details, Mr. Jordan, one of the agreement's drafters, is "quite certain" Mr. Swidler's estimate for $671,050 is the second Exhibit B.[4] Exh. E, P. 97, ln. 1-14. Assuming he is correct, Mr. Swidler provided the following testimony about his $671,050 estimate:

> Q. With regard to the $671,050 estimate, which is the December 13th, which is at MSI 117 and 118, that, the 671,050, Mr. Swidler, I want to make sure I'm correct, that estimate includes the cost to, for example, to repair and replace defective work, correct?
> A Yes.
>
> * * *
>
> Q And since you did not prepare the estimate but relied upon the estimate that Derrell (sic) prepared, you don't know what part of the 671,050 refers to the cost to repair defective work as opposed to the cost to repair damage caused by defective work, correct?
> A Correct.

[D.E. 83-10, P. 49, ln. 3-8 and 12-17]. Mr. Clark's also testified that his estimate contains amounts to repair and replace defective construction. [D.E. 64, P. 8-10].[5]

There is no evidence in the record which satisfies the Bradfield's burden to allocate what dollar amounts in the settlement agreement are for uncovered items. Even if the Court were to compare each line item on the $671,050 estimate with the Derelle estimate and May 2013 Lougheed estimate as suggested by the Bradfields, allocation would still be impossible because the $671,050 estimate does not distinguish between covered or uncovered items. Plus, Mr. Swidler's estimate lists items like landscaping and moving and living expenses but neither Mr. Clark's Derelle estimate, nor Mr. Lougheed's estimate, list prices for those items. [D.E. 88, P. 12-18]. Nor does Mr. Clark's or Mr. Lougheed's estimates state if the line items on their estimates are for covered or

---

[4] Mr. Jordan was not disclosed as an expert in this case and has no firsthand knowledge or expertise to establish that the consent judgment was reasonable. Although his recollection of what took place at the mediation is different than others, his different recollection does not create a material fact for this reason.

[5] In addition, the signatories to the agreement testified that the $671,050 estimate includes amounts to repair construction defects. *See* Exh. G, P. 73, ln. 21-P. 74, ln. 22 and Exh. J, P. 210, ln. 4-P. 212, ln. 10.

9

uncovered amounts. The duty to allocate belonged to the Bradfields and not the Court. Since the Bradfields failed to allocate, MCC is entitled to summary judgment.

V. **The Bradfields' Arguments Regarding Joint And Several Liability Support MCC's Argument That No Coverage Exists**

The Bradfields could have apportioned fault between Horgo Signature (who MCC did not insure) and Winfree Homes (which MCC did insure) in the settlement agreement but they did not. The fact remains, that the Bradfields sued both and they did not and did not allocate between them even if, in theory, they could both be 100% liable. The Bradfields failure to allocate is fatal to their case. *Trovillion Const. & Dev., Inc. v. Mid–Continent Cas. Co.*, 2014 WL 201678 (M.D. Fla. 2014).

Concessions the Bradfields made also show MCC is entitled to summary judgment because they admitted "there is no material issue of law or fact that the damages awarded to repair the property damage to the Bradfield Home constituted 'costs of repair and replacement of the defective product." [D.E. 71, P. 18]. Those admissions are fatal because under Florida law there is no coverage to repair and replace defective products. *See e.g. Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 1305-1307 (11th Cir. 2012) (holding no coverage exists to repair and replace defective products). There is also no coverage to remove and replace undamaged property (e.g. the drywall and HVAC) that may be damaged when other construction is performed. *See Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.*, 227 F. Supp. 2d 1248, 1270-71 (M.D. Fla. 2002) (no coverage to replace floors that will be damaged while removing and replacing a pipe); *Palm Beach Grading, Inc. v. Nautilus Ins. Co.*, 2011 WL 2749669, *1-2 (11th Cir. 2011) (same).[6] Thus, no coverage exists in light of their admissions and because the Bradfields failure to allocate.

---

[6] Although the Bradfields misapplied the law, their admission that the consent judgment "only provided for the recovery of 'economic damages'" is relevant because no coverage exists for economic damages. *See Key Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 450 F. Supp. 2d 1311, 1317 (M.D. Fla. 2006) (holding no coverage exists under MCC's policies for economic damages), *Couch on Ins*. §129:1 (3d ed. 2005) (stating CGL policies do not provide coverage "for contractual liability of the insured for economic loss.

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2014 I e-filed this document using the CM/ECF system.

I further certify that I am unaware of any non CM/ECF participants.

/s/ MELISSA A. GILLINOV
Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
Melissa A. Gillinov
Florida Bar No. 11892
mgillinov@hinshawlaw.com
2525 Ponce de Leon, Blvd., Fourth Floor
Miami, Florida 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
*Counsel for Mid-Continent Casualty Company*

14966215v1 0946262