## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**JOSEPH BRADFIELD and PATRICIA
BRADFIELD,**

      **Plaintiffs,**

**v.**                                                          **Case No: 5:13-cv-222-Oc-10PRL**

**MID-CONTINENT CASUALTY
COMPANY**

      **Defendant.**

_____

## ORDER

Pending before the Court is Defendant Mid-Continent Casualty Company's motion to compel a forensic examination of Plaintiff counsel's computer and his law firm's server.  (Doc. 119).  The Court set this matter for a hearing, which was held on September 11, 2014.  For the reasons explained below, the Court finds that the Defendant has failed to make a good cause showing to obtain such an examination, and in light of the considerations of Rule 26(b)(2(C), Defendant's motion for a forensic examination is due to be denied.

### I.     BACKGROUND

On August 29, 2012, Plaintiffs Joseph and Patricia Bradfield sued Horgo Signature Homes, Inc., and Winfree Homes, Inc., in state court seeking damages for alleged structural defects in the construction of their custom home.  According to Plaintiffs, both Horgo Signature Homes and Winfree Homes maintained general liability insurance policies through Mid-Continent, and requested that Mid-Continent undertake their defense and indemnify them from any damages arising from the Bradfields' claim.  Mid-Continent refused to defend or indemnify Horgo

Signature Homes and Winfree Homes, claiming that they had no obligation to do so under the existing policies.

Ultimately, Plaintiffs, Horgo Signature Homes and Winfree Homes, negotiated a mediated settlement agreement (Doc. 2, Ex. H), and the state court entered a Consent Final Judgment in favor of the Plaintiffs.   (Doc. 2, Ex. I).   The Consent Final Judgment ratified and confirmed the mediated settlement agreement and awarded Plaintiffs $696,108.00 in damages.   Plaintiffs then filed the instant action against Mid-Continent seeking damages in the principal amount of $696,108.00 and declaratory relief.

Currently before the Court is Defendant Mid-Continent's "Motion for a Forensic Examination to Compel the Production of Unproduced Documents and For Sanctions Because of Spoilation" (Doc. 119), to which Plaintiff has responded (Doc. 121).   Defendant argues that it should be permitted to conduct an independent forensic examination of Plaintiffs' counsel's computer system in order to search for documents that may be responsive to discovery requests. Plaintiff objects to the intrusion, and argues the request is unnecessary because any and all documents Defendant contends could exist have already been produced by either Plaintiffs' counsel or Mr. Milgrim (a third party), who testified under oath that he has not discarded, deleted or otherwise destroyed any such documents.   (Doc. 121, p. 8).

The parties' dispute centers upon documents in the possession of Mr. Jordan, counsel for Plaintiffs in this action and in the underlying action.   Defendant sought from Plaintiffs any documents relevant to the mediated settlement agreement, the consent judgment, agreements with subcontractors, and construction and repair damages.   (Doc. 132).   Defendant contends that these documents are relevant to a central issue in the case, whether the prior settlement was objectively reasonable and made in good faith.   Initially, Plaintiffs claimed that documents in Mr. Jordan's

possession were privileged.   The Court ruled, however, that Mid-Continent is entitled to discovery regarding the Mediation Settlement Agreement and Consent Final Judgment so that it can effectively challenge the reasonableness of the settlement and whether it was reached in good faith. (Doc. 70).

Mr. Jordan has presented evidence that in May 2013 the computer system at his office experienced a severe power surge.   He also presented evidence that the server was damaged and that the surge resulted in data being corrupted.   (Doc. 121, p. 3).   Mr. Jordan worked with Phuoc "Larry" Truong[1] of IT Brains, who assisted in resolving the computer problems, and attempted to recover as much data as possible.   Although Defendant questions whether Mr. Truong could have used more sophisticated methods to retrieve and recover corrupted data, it is undisputed that Mr. Truong, an IT specialist with relevant certifications (Doc. 121, p. 49), made a good faith effort to restore and obtain all data on the computer system, including data that would be responsive to Defendant's document requests.   In his affidavit, Mr. Truong states that he also assisted counsel in searching for documents related to this case, including emails to and from the Bradfields, Mr. Milgrim, and expert Mr. Swidler.   (Doc. 121, p. 50).   Mr. Truong further states that the apparent loss of data, including emails, is the result of the power surge.   (Doc. 121, p. 50).

Mr. Jordan represents that all electronic data exchanges by and between Plaintiffs' counsel and the underlying insured's counsel have been produced, and there is no basis to believe any other

---

[1]     The Court acknowledges that, during the hearing, Defendant was reassured that it would have an opportunity to cross-examine Mr. Truong, or to consult its own expert, should Mr. Truong's hearing testimony become a deciding factor with regard to the motion.   To this end, the Court has limited its consideration of Mr. Truong's testimony to that which was presented in his <u>affidavit</u> <u>only</u>.   *See*, *e.g.,* Doc. 212, p. 50.   Further, Mr Truong's testimony merely supports Mr. Jordan's own account of the damage to his computer system and his resulting attempts to recover documents.   Specifically, Mr. Truong's testimony is irrelevant to the key analysis before the Court – whether Defendant can show a good cause basis for compelling a forensic examination.

emails or electronic documents exist.   Indeed, it is undisputed that relevant documents were produced by Mr. Milgrim, and relevant information was obtained during the depositions of Mr. Jordan, Mr. Milgrim, and various experts who were retained in the underlying case.   Mr. Jordan also represented that he produced as many responsive documents as he could access, including some that had been retained in hard copy, following his computer system failure.

## II.   DISCUSSION

At the hearing on Defendant's motion, the Court began by asking Defense counsel what he was looking for, or rather, what he hoped to find and what he thought he would do with it.   In other words, the Court inquired, given the discovery that had been produced by Plaintiff's counsel and third parties to date, what was it that Defense counsel hoped to uncover from the forensic examination, and how might it help his defense?   In some form or other, this inquiry was made during the course of the hearing, and in some form or other, Defense counsel's response was that he "shouldn't be required to prove a negative."   That is, Defense counsel's position was that he does not know what he might find so he cannot tell the court what he hoped to find, and further what he would use it for.

Perhaps Defense counsel is right insofar has he may not be able to say precisely what it is he would find.   But these responses overlook his obligation to make a good cause showing, under Rule 26, that despite the limited accessibility of the records that the benefit of the likely discovery outweighs the burden.

Federal Rules of Civil Procedure 26(b)(2) governs limitations on frequency and extent of discovery, and is applicable here.   Under 26(b)(2)(C), the Court must limit the frequency or extent of discovery otherwise allowed if it determines that certain conditions exist.   See Rule 26, comment, 2006 Amendment ("Once it is shown that a source of electronically stored information

is not reasonably accessible, the requesting party may still obtain discovery by showing good cause, considering the limitations in Rule 26(b)(2)(C) that balance the costs and potential benefits of discovery.")   Indeed, the Court can (and should) limit the extent of discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."   Rule 26(b)(2)(C); also comment, 2006 Amendment ("Under this rule, a responding party should produce electronically stored information that is relevant, not privileged, and reasonably accessibly, subject to the (b)(2)(C) limitations, that apply to all discovery.").

The commentary clearly states that "[t]he requesting party has the burden of showing that its need for the discovery outweighs the burdens and costs of locating, retrieving, and providing, information."   The express, and unequivocal, language of Rule 26(b)(2)(C) provides that the Court shall consider "the importance of the discovery in resolving the issues."   And the commentary further explains that, to aid in this overall determination, appropriate considerations include: "the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources," and "predictions as to the importance and usefulness of the further information."

In similar cases, courts have held that electronically stored information is not reasonably accessible when accessing the information requires consultation of outside experts because the data is not in a searchable format.   *See, e.g., Calixto v. Watson Bowman Acme Corp.,* No. 07–60077–CIV, 2009 WL 3823390, *11 (S.D.Fla. Nov. 16, 2009)(finding that electronic data was not reasonably accessible for the purposes of a Rule 26(b)(2)(C) analysis where it was stored on backup tapes in a compressed format and required an outside consultant's expertise to restore to a

searchable format); *Tucker v. American Intern. Group, Inc.*, 281 F.R.D. 85, 98 (D.Conn. 2012) (finding that electronic data and emails were not reasonably accessible where it would have been necessary to obtain an outside consultant to restore the records sought and attorneys would need to be present to guard against confidentiality concerns).

Here, the Court is satisfied that, based upon the evidence regarding Mr. Jordan's damaged computer system, and Mr. Truong's affidavit describing his efforts to recover lost data and search for documents relevant in this case, Plaintiffs have met their burden under Rule 26(b)(2)(C) of showing that additional electronically stored information is not reasonably accessible because of undue burden or cost.

Once it is shown that a source of electronically stored information is not reasonably accessible, the Court proceeds to consider whether the requesting party may still obtain the discovery by showing good cause, and considering the limitations of Rule 26(b)(2)(C).[2]   To this end, broad and uninformative responses by Defense counsel that Defendant is entitled to all information reasonably calculated to lead to the discovery of admissible evidence, and that he cannot prove a negative, do nothing to aid the Court in the Rule 26(b)(2)(C) inquiry.[3]

---

[2]      *See* Comment, 2006 Amendment, Subdivision (b)(2) ("The decision whether to require a responding party to search for and produce information that is not reasonably accessible depends not only on the burdens and costs of doing so, but also on whether those burdens and costs can be justified in the circumstances of the case.").   As the comments explain, appropriate considerations may include:   (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources.

[3]      Notably, Rule 26(b)(1) expressly provides that all discovery is subject to the limitations imposed by Rule 26(b)(2)(C), which requires an analysis regarding whether the burden or expense of the proposed discovery outweighs its likely benefits.   Further, a pending amendment to Rule 26, if adopted, would make this even more explicit, and would impose a proportionality standard in place of the oft quoted "calculated to lead to the discovery of admissible evidence" language.   Proposed Amendments to the

The Court does recognize, as the commentary notes, that in some circumstances the good cause determination "may be complicated because the court and parties may know little about what information the sources identified as not reasonably accessible might contain . . . ."  Here, however, there is an abundance of evidence from Plaintiffs' counsel himself, Mr. Milgrim, as well as the experts, which should undoubtedly give Defense counsel enough information to articulate some basis for why the intrusive search he proposes is necessary due to its importance to the issues at stake in this action.   Yet, he has failed to do so.

This is not a case in which the information is unavailable from another source.  To the contrary, Defendant has received the precise information he seeks from Plaintiffs' counsel's computer from Plaintiff's counsel himself, Mr. Milgrim, and experts; Defense counsel simply believes there is something more to find.  Moreover, this is not a case in which the particular information sought is known to actually exist.  Defense counsel has not identified a single document or category of documents that he has reason to believe is missing from those already obtained in discovery.   Finally, this is not a case in which the information has been withheld.   Mr. Jordan has cooperated with Defendant's discovery requests, and represented that he disclosed all responsive documents that were accessible in light of his computer system failure.[4]

---

Federal Rules of Civil Procedure on Discovery, May 2014, available at http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/civil_rules_redline.pdf.   The Committee Note presently states: "Information is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense and is proportional to the needs of the case."   It further states that "[t]he considerations that bear on proportionality are moved from present Rule 26(b)(2)(C)(iii), slightly rearranged and with one addition."

[4]      Defendant would disagree that Mr. Jordan cooperated with discovery requests, and claims he "obstructed Mid-Continent's attempts to obtain discovery."   (Doc. 119, p. 2).   Defendant also argues, "[a]t his deposition Mr. Jordan even discussed his computer system but never once mentioned that he had any computer viruses, experienced server problems or failed to preserve hard copies of documents that were electronically created, transmitted or received."   (Doc. 119, p. 4).   While Mr. Jordan may not have been particularly forthcoming, in light of the dynamic between counsel that was displayed during the hearing on September 11, 2014, the Court has some appreciation of Mr. Jordan's reticence, though would

In short, Defendant has not shown good cause as required under Rule 26(b)(2) to compel a forensic examination of Mr. Jordan's computer system. It is undisputed that the discovery sought has already been obtained from other sources, including Mr. Milgrim, experts, and Mr. Jordan's disclosures. It is highly probable, if not certain, that the discovery sought would be cumulative or duplicative of what has already been obtained. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Significantly, Defendant cannot demonstrate that the burden and expense of the discovery sought outweighs the likely benefit, considering the importance of the issues at stake. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). Defendant cannot even articulate <u>whether</u> the information sought has any importance, much less to which issues.

While the Court has considered Defendant's offer to bear the financial cost of a forensic examination, that offer does not change the analysis. Defendant still has not demonstrated good cause, and here, Plaintiffs' "undue burden and cost" includes the intrusiveness of the search and inherent privacy concerns. After all, what Defendant proposes is a forensic examination of <u>Counsel's</u> computer system. Before compelling such an inspection, the Court must weigh inherent privacy concerns against its utility. *Wynmoor Community Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687 (S.D.Fla. 2012) (citations omitted). The Court should consider whether the responding party has withheld requested information, whether the responding party is unable or unwilling to search for the requested information, and the extent to which the responding party has complied with discovery requests. *Id.*

Although there is precedent for compelling a forensic examination in appropriate circumstances, those circumstances do not include the facts of the instant case. *See Wynmoor*, 280 F.R.D. at 687 (granting motion to compel a forensic examination where responding party had

---

urge both counsel to cooperate as the case proceeds.

not produced any electronically stored information and was unwilling to conduct a search of its computer system for responsive documents).   Defendant has not, therefore, met its burden of showing good cause to warrant a forensic examination under Fed. R. Civ. P. 26(b)(2)(C).

### III.   CONCLUSION

For the reasons explained above, Mid-Continent's Motion for a Forensic Examination, to Compel Production of Unproduced Documents, and for Sanctions (Doc. 119) is **DENIED**.

**DONE** and **ORDERED** in Ocala, Florida on September 15, 2014.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties