**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

JOSEPH BRADFIELD and PATRICIA
BRADFIELD, citizens of Florida,

      Plaintiffs,

vs.                                Case No. 5:13-cv-00222-WTH-PRL

MID-CONTINENT CASUALTY COMPANY,
a foreign corporation,

      Defendant.
_____/

**MID-CONTINENT CASUALTY COMPANY'S**
**VERIFIED MOTION TO TAX ATTORNEY'S FEES AND COSTS**

Pursuant to Federal Rule of Civil Procedure 54(d), Section 768.79 of the Florida Statutes and Florida Rule of Civil Procedure 1.442, Mid-Continent Casualty Company ("Mid-Continent"), moves for an order taxing attorney's fees and costs. The grounds for the motion are contained in the following memorandum of law.

**A.    Preliminary Statement**

In this case Dr. and Mrs. Bradfield, who are husband and wife, retained Horgo Signature Homes to construct their house. *See* [D.E. 25-1, Page 2 at ¶6]. After the home's completion the Bradfields jointly sued Horgo Signature Homes, who Mid-Continent did not insure, and Winfree Homes to recover money for the construction defects. S*ee* [D.E. 25-1]. Neither Bradfield brought a count in his or her own name. Without propounding any discovery, Horgo Signatures Homes and Winfree Homes eventually entered into a consent judgment with the Bradfields. That document did not allocate any money between the Bradfields, between the defendants or between covered and uncovered property. *See* [D.E. 64-11].

Thereafter, the Bradfields filed a two count complaint against Mid-Continent in a failed attempt to collect the consent judgment. Count One erroneously asserted Mid-Continent breached

its duty to defend Horgo Signature Homes and Winfree Homes. *See* [D.E. 2, Pages 6-7]. As damages the Bradfields sought the amount of the consent judgment, interest, costs and attorney's fees. *See* [D.E. 2, Page 7, ¶33]. Count Two incorrectly argued coverage existed for the consent judgment under policies issued by Winfree Homes and Horgo Enterprises, an entity the Bradfields never sued. *See* [D.E. 2, Pages 7-10]. The relief requested was a declaration that Mid-Continent was obligated to satisfy the unallocated consent judgment and to reimburse the Bradfields for their costs and attorney's fees. *See* [D.E. 2, Page 10, ¶¶(d)(e)].

Mid-Continent is entitled to recover $46,399.58 in taxable costs because this Court granted Mid-Continent's dispositive motions on November 10, 2015, and entered a judgment in Mid-Continent's favor on November 16, 2015. In addition, because the Bradfields failed to accept Mid-Continent's September 12, 2013, offer of judgment, Mid-Continent is also entitled to an award of the $312,310.5 in attorney's fees it incurred between the date it served the offer of judgment and November 16, 2015. *See* [D.E. 152]. *See generally* a copy of the offer of judgment, which is attached as Exhibit "A."

B.   **Mid-Continent Is Entitled to Recover Its' Costs**

In *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987), the United States Supreme Court held the term "costs" as used in Federal Rule of Civil Procedure 54(d) is defined by 28 U.S.C § 1920, which specifically enumerates expenses a federal court may tax as costs. Section 1920 provides that a judge or clerk of any court of the United States may tax the following as costs:

> (1)   Fees of the clerk and marshal;
> (2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3)   Fees and disbursements for printing and witnesses;
> (4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5)   Docket fees under section 1923 of this title;

2

>    (6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

As reflected in the declaration of Ronald L. Kammer attached hereto as Exhibit "B", Mid-Continent is seeking to recover $46,399.58 in costs for (1) $38,666.17 in deposition transcript and court reporter fees, (2) $5,427.27 in photocopying and printing costs, (3) $1,133 in subpoena service and summons fees, (4) $773.14 in witness fees and (5) $400 for the filing fee. *See* Exhibit B at ¶21.

### 1. Deposition Transcript Fees

The United States Court of Appeals for the Eleventh Circuit has held that under section 1920, a party is entitled to court reporters fees and deposition fees that were necessarily obtained for use in the case. *See EEOC v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). "[A] deposition need not be introduced into evidence at trial in order to be 'necessarily obtained for use in the case.' If, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery, it may be included in the costs of the prevailing party." *Fogleman v. Aramco*, 920 F. 2d 278, 285 (5th Cir. 1991). Furthermore, depositions taken of witnesses listed on the opposing party's witness list are necessarily obtained and, therefore, taxable. *See Murphy v. City of Flagler Beach*, 761 F. 2d 622, 631 (11th Cir. 1985). Since "the parties presumably have equal knowledge of the basis for each deposition," the party who challenges the proposed costs "bears the burden of showing that specific deposition costs or a court reporter's fee was not necessary for use in the case or that the deposition was not related to an issue present in the case at the time of the deposition." *George v. Fla. Dep 7 of Corr.*, No. 07–80019–CIV, 2008 WL 2571348, at *5 (S.D. Fla. May 23, 2008).

In this case Mid-Continent is seeking $38,666.17 in fees of the court reporter and for deposition transcripts. All of those amounts were necessary. For instance, the Bradfields' December 13, 2013, Disclosure of Expert Testimony listed nine purported experts. *See* the Disclosure, attached as Exhibit "C." Mid-Continent is entitled to be reimbursed for the deposition transcripts of the Bradfields' seven purported experts that Mid-Continent deposed. Those individuals included Alan Lougheed, Cecil Clark, Hidalgo Rangel, Steven Lightcamp, Ralph Vock, John Shane and Michael Swidler.[1] *See* the invoices for those witnesses' deposition transcripts, attached as Composite Exhibit "D." Mid-Continent relied on the transcripts of Mr. Lougheed, Mr. Clark and Mr. Swidler when preparing for trial and moving for summary judgment. *See e.g.* [D.E. 63, Pages 9-14]. Mid-Continent also relied on the transcripts of Mr. Lougheed, Mr. Clark, Mr. Rangel and Mr. Swidler when preparing motions in limine and motions to strike. *See* [D.E. 83], [D.E. 85] and [D.E. 130]. In addition, Mid-Continent relied on the depositions of Mr. Swidler and Mr. Lougheed when opposing the Bradfields' Request to Take Judicial Notice. *See* [D.E. 67, Pages 3-4].

Along with relying on the transcripts mentioned above, Mid-Continent also deposed the Bradfields, Mr. Winfree, Mr. Higo and their counsel, Mr. Jordan and Mr. Milgrim. *See* the invoices for those witnesses' depositions, attached as Composite Exhibit "F." Each of these witnesses was reasonably necessary to Mid-Continent's defense because the Bradfields were suing Mid-Continent to collect a consent judgment that was drafted by Mr. Milgrim and Mr. Jordan and

---

[1] Mid-Continent is also seeking to be reimbursed for the $150 bill it paid Veritext regarding a March 4, 2014, deposition of Michael Swidler. *See* the April 2, 2014, invoice, attached as Exhibit "E." As discussed in Mid-Continent's response to the Bradfields' March 3, 2014, Motion for a Protective Order, the assistant for the Bradfields' law firm emailed Mid-Continent's counsel on February 24, 2014, that she was holding March 4, 2014, for Mr. Swidler's deposition. *See* the email from the February 24, 2014, email from A. Murray to M. Gillinov at [D.E. 51-1]. However, on March 3, 2014, the Bradfields' moved for a protective order and incorrectly asserted Mid-Continent unilaterally set the deposition. *See* [D.E. 50]. The Court denied the Bradfields' motion shortly before 10a.m. on March 4, 2014, but the 11a.m. deposition did not go forward as a result of the Plaintiff's counsel. *See generally* the March 4, 2014, Order at [D.E. 54]. Mid-Continent incurred the $150 as a cancellation fee and is seeking to have it reimbursed in light of the Court denying the Bradfields' motion.

executed by the Bradfields, Mr. Winfree, whose company was the project's general contractor, and Mr. Higo, whose company Horgo Signature Homes entered into the construction agreement with the Bradfields. Mid-Continent relied on those witnesses' deposition transcripts when preparing for trial and moving for summary judgment. *See e.g.* [D.E. 63, Page 1-4 and 15-16]; [D.E. 64, Pages 1-2, 5-7 and 24-25]; [D.E. 92, Pages 2-5]; [D.E. 122, Pages 1-3, 7 and 9]. Mid-Continent also relied on the depositions of Mr. Winfree and Mr. Higo when opposing the Bradfields' Request for Judicial Notice. *See* [D.E. 67, Pages 2-5].

In addition to Mid-Continent deposing the individuals who executed and drafted the consent judgment, Mid-Continent was also compelled to depose the Lake County Chief Building Inspector. That deposition was necessitated because the consent's judgment assertion that the Bradfields' home was completed during Winfree Homes' first policy, which did not have an endorsement regarding subcontractors, contradicted the Lake County Building Department's official records. *See generally* [D.E. 2, Page 2 at ¶7]. *See* the invoice for Mr. Nemecek's deposition, attached as Exhibit "G." Mid-Continent relied on Mr. Nemecek's deposition and records when preparing for trial, moving for summary judgment and when opposing the Bradfields' Request for Judicial Notice. *See* [D.E. 67, Pages 2-3] and [D.E. 122, Pages 5-6].

Another person that Mid-Continent was required to depose is Philip Horvath. *See* the invoice for Mr. Horvath's deposition, attached as Exhibit "H." His deposition was necessitated because he applied for Horgo Enterprises' insurance and the Bradfields asserted Horgo Enterprises' allegedly obtained insurance for Horgo Signature Homes so coverage for the consent judgment purportedly existed under Horgo Enterprises' policies. *See* [D.E. 2 at ¶¶9, 29, 32, 35, 37, 38]. Mid-Continent relied on Mr. Horvath's deposition when preparing for trial and moving for summary judgment. *See* [D.E. 63, Pages 2-3 and 15]; [D.E. 64, Page 3] and [D.E. 92, Pages 2-3].

Like the other deposition transcripts that Mid-Continent is seeking reimbursement for, other reasonably necessary transcripts were those of Mr. Gene Hert, who was Mid-Continent's corporate representative, and Mr. Lynn Wagner and Ms. Susan Domanski, who were Mid-Continent's exerts. *See* the invoices for Mr. Hert's, Mr. Wagner's and Ms. Domanski's depositions, attached as Exhibit "I." Mid-Continent relied on all of those transcripts when preparing its' case for trial and also relied on Mr. Hert's deposition testimony when opposing the Bradfields' Amended Motion for Partial Summary Judgment and Mr. Wagner's deposition testimony when opposing the Bradfields' Motion and Memorandum of Law in Support of Motion in Liminee (sic). *See* [D.E. 32, Pages 4-5, 11, and 18-19] and [D.E. 79].

2.  **Photocopying and Printing Costs**

As stated above, a prevailing party may recover "fees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). The "underlying documents need not be introduced at trial in order for the cost of copying them to be recoverable." *State of Ill. v. Sangamo Constr. Co.*, 657 F.2d 855, 867 (7th Cir. 1981). "Copies attributable to discovery are a category of copies recoverable under § 1920(4)." *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000). Furthermore, use of information contained in a file is not a prerequisite to finding that copying the file was necessary; rather, the inquiry centers around whether the prevailing party "could have reasonably believed that it was necessary to copy the papers at issue." *Id.*

Along with deposition costs, Mid-Continent also seeks to recover a total of $5,427.27 in costs for photocopying and printing. *See* a copy of the invoices attached as Composite Exhibit "J." This figure includes, but is not limited to, the more than 500 pages the Bradfields emailed in response to Mid-Continent's August 30, 2013, discovery request, the documents Mid-Continent relied on when moving to compel discovery, the more than 500 additional pages of responsive documents the Bradfields emailed after Mid-Continent moved to compel discovery, the more than

200 pages the Bradfields emailed in response to the Court's January 24, 2014, Order requiring the Bradfields to supplement their expert disclosures, the $105 charged by the Lougheed Resource Group to copy and put on a CD documents responsive to Mid-Continent's non-party subpoena, the 1,300 pages Mr. Milgrim emailed in response to Mid-Continent's non-party subpoena on his law firm, the bates stamping and then reprinting of more than 800 of Mr. Milgrim's documents so they could be submitting under seal in response to the Bradfields' Motion for a Protective Order regarding Mr. Milgrim's documents, the documents contained on Mid-Continent's trial exhibit list, the more than 1,700 pages the Bradfields emailed as their trial exhibits, $50 to a court reporter named Barbara Perry for the copy costs associated with the exhibits to Susan Domanski's deposition, $50.00 to Pro-Lab, who was one of the Bradfields' experts, for the copy costs associated with that entity's response to Mid-Continent's non-party subpoena, $1,304.7 in copy costs that were incurred by Mid-Continent's experts in their analysis of the case and preparation of expert reports, and documents Mid-Continent brought to depositions to be marked as exhibits. *See generally* [D.E. 46, Page 4]; [D.E. 58] and D.E. [D.E. 70]. The copying and printing costs incurred by Mid-Continent in conjunction with the discovery produced by the Bradfields are unquestionably recoverable, as are the remaining copying/printing costs because Mid-Continent believed it was reasonably necessary to copy/print such papers. *See* Exhibit B at ¶22.

      3.      **Process/Subpoena Service Fees**

Pursuant to §§1920(1) and 1921, courts are authorized to tax private process servers' fees as costs, provided that their rates do not exceed the cost of having the U.S. Marshal's service effectuate service. *See EEOC v. W & O, Inc.*, 213 F.3d 600, 623-24 (11th Cir. 2000). The United States Marshal's fee for process served or executed personally is $55.00 per hour for each item served, plus travel costs and other out-of-pocket expenses. *See* 28 C.F.R. §0.114. Mid-Continent

consequently seeks to recover $1,133 in costs incurred in serving non-parties with subpoenas for records and depositions. *See* the invoices attached as Exhibit "K."

    **4.**    **Witness Fees**

"A witness shall be paid an attendance fee of $40 per day for each day's attendance" at trial or deposition. 28 U.S.C. § 1821. The statute also provides for payment of mileage where the witness uses a private car. *See* 28 U.S.C. § 1821(c)(2) ("A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle."). Payment is generally mandatory. *See* 28 U.S.C. § 1821(a)(1) ("Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section."). Mid-Continent is consequently seeking $773.14 in witness fees and mileage.[2] *See* invoices and copies of payment ledgers attached as Exhibit "L."[3] Additional information is listed on Exhibit J.

    **5.**    **Fees of the Clerk**

A notice of removal filing fee "has been explicitly recognized as a taxable 'fee of the clerk' under 28 U.S.C. § 1920(1)." *Covington v. Arizona Beverage Co., LLC*, No. 08-21894, 2011 WL

---

[2] Some non-party witnesses were deposed more than once because the Bradfields' counsel and Mr. Milgrim, who was counsel for Mr. Higo and Mr. Winfree during both the underlying action and coverage action, refused to answer questions regarding the settlement agreement and mediation until after the Court denied the Bradfields' motion for a protective order. In addition, until the Court denied that motion Mr. Milgrim and Mr. Jordan refused to permit other witnesses from answering multiple questions. *See generally* [D.E.70, Page 6]. Once the Court denied the Bradfields' motion Mid-Continent redeposed Mr. Jordan, Mr. Milgrim, Mr. Higo, Mr. Winfree and Mr. Swidler. Mid-Continent is entitled to be reimbursed for the multiple witness fees it incurred because of Mr. Jordan's and Mr. Milgrim's legally incorrect objections and instructions that witnesses not answer questions.

[3] The majority of these witnesses were designated by the Bradfields as experts so Mid-Continent was forced to pay the witnesses at rates far in excess of the amount set by 28 U.S. § 1821. Mid-Continent is only seeking to recoup the statutory authorized amount.

810592, at *3 (S.D. Fla. Jan. 25, 2011). Mid-Continent is consequently entitled to recover the $400.00 expended for the filing fee paid to the Clerk of this Court to remove this lawsuit from the Fifth Judicial Circuit Court. *See* information regarding the removal fee, attached as Exhibit "M."

**C.     Mid-Continent Is Entitled To An Award Of The Attorney's Fees**

   **1.     Florida Law Provides For An Award of Attorney's Fees**

Under Federal Rule of Civil Procedure Rule 54(d), Mid-Continent is permitted to make "[a] claim for attorney's fees and related nontaxable expenses" where such is allowed by statute or rule. Fed. R. Civ. P. 54(d)(2). Here, Mid-Continent is entitled to an award of $312,310.50 in attorney's fees that were incurred from September 12, 2013, through the date of the Court's judgment entered on November 16, 2015, because Mid-Continent the Bradfields failed to accept Mid-Continent's offer of judgment.

   Florida's offer of judgment statute provides:

   [I]f a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him . . . from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award.

§ 768.79(1), Fla. Stat. The statute further provides:

   If a defendant serves an offer which is not accepted by the plaintiff, and if the judgment obtained by the plaintiff is at least 25 percent less than the amount of the offer, the defendant shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served, and the court shall set off such costs in attorney's fees against the award. When such costs and attorney's fees total more than the amount of the judgment, the court shall enter judgment for the defendant against the plaintiff for the amount of the costs and fees, less the amount of the award to the plaintiff.

*Id.* § 768.79(6)(a).

"Once a good faith offer for judgment in conformity with these requirements is made, and the defendant receives a judgment of no liability, the defendant has the right under §768.79 to recover an attorneys' fee from the date of the settlement offer." *Egwuatu v. Burlington Coat Factory Warehouse Corp.*, No. 8:10–CV–996, 2011 WL 3793457, at *2 (M.D. Fla. Aug. 25 2011). A defense verdict, because it gives the plaintiff a zero recovery, constitutes "a judgment . . . at least 25 percent less than the amount of the offer." *See, e.g.*, *Menchise v. Akerman Senterfitt*, 532 F. 3d 1146, 1149 (11th Cir. 2008) (affirming award of $223,158.97 in attorney's fees under section 768.79 following grant of defendant's summary judgment motion because the plaintiff rejected the offer of judgment). "This statute, moreover, applies to diversity actions in Florida's federal courts because §768.79 is 'substantive law for Erie purposes.'" *Egwuatu*, 2011 WL 3793457, at *2 (referencing *Menchise*, 532 F. 3d at 1150-51). *See also Hartford Accident & Indemnity Co. v. Crum & Forster Specialty Ins. Co.*, No. 10–24590–CIV., 2012 WL 5818138, *1-2 (S.D. Fla. Nov. 15, 2012) (awarding Crum & Forster Specialty Insurance Company $259,592.50 in attorney's fees after commenting that "[t]he Eleventh Circuit has consistently held that Florida Statute §768.79 is substantive law in diversity cases and is applicable to claims based on state law that are filed in federal court.").

Proposals for settlement are also governed by Florida Rule of Civil Procedure 1.442, which "applies to all proposals for settlement authorized by Florida law." Fla. R. Civ. P. 1.442(a). This includes proposals for settlement pursuant to Section 768.79. *See, e.g.*, *McMahan v. Toto*, 311 F.3d 1077, 1082 (11th Cir. 2002) (stating Rule 1.442 "applies to offers made pursuant to §768.79"). A proposal for settlement is deemed rejected if the party to whom it is made does not deliver a written notice of acceptance to the offering party within thirty days after service of the proposal. *See* Fla. R. Civ. P. 1.442(f)(1). An award of attorney's fees under Section 768.79 is "mandatory if the statutory requirements in subsections (6)(a) or (b) are satisfied and if the offer of

judgment was made in good faith." *Respiratory Care Servs., Inc. v. Murray D. Shear, P.A.*, 715 So. 2d 1054, 1056 (Fla. 5th DCA 1998). Good faith simply requires "a reasonable basis for making the offer and an intent to settle the case." *Downs v. Coastal Sys. Int'l, Inc.*, 972 So. 2d 258, 262 (Fla. 3d DCA 2008). Where the statutory requirements are satisfied and the opposing party has not proven the offer was made in bad faith, a court cannot deny a motion for attorney's fees on the basis that the questions of law and fact were close. *See Hartley v. Guetzloe*, 712 So. 2d 817, 818 (Fla. 5th DCA 1998).

### 2. Mid-Continent's Offer Of Judgments Satisfies Florida Law

The formal requirements for a settlement proposal that functions as an offer of judgment are set forth in Section 768.79 and Rule 1.442. Under Section 768.79, an offer must:

(a) Be in writing and state that it is being made pursuant to this section.
(b) Name the party making it and the party to whom it is being made.
(c) State with particularity the amount offered to settle a claim for punitive damages, if any.
(d) State its total amount.

§ 768.79(2), Fla. Stat. In addition, the offer is to "be construed as including all damages which may be awarded in a final judgment." *Id.*

Under Rule 1.442, "[n]o settlement proposal shall be served later than 45 days before the date set for trial or the first day of the docket on which the case is set for trial, whichever is earlier." Fla. R. Civ. P. 1.442. Rule 1.442 also provides the following additional requirements for a proposal for settlement:

(1) A proposal shall be in writing and shall identify the applicable Florida law under which it is being made.
(2) A proposal shall:
 (A) name the party or parties making the proposal and the party or parties to whom the proposal is being made;
 (B) identify the claim or claims the proposal is attempting to resolve;
 (C) state with particularity any relevant conditions;
 (D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal;

11

  (E) state with particularity the amount proposed to settle a claim for punitive damages, if any;
  (F) state whether the proposal includes attorneys' fees and whether attorney's fees are part of the legal claim; and
  (G) include a certificate of service in the form required by rule 1.080(f).

Fla. R. Civ. P. 1.442.  In addition, a party making a proposal is required to serve the proposal on the party to whom it is made, but is not required to file the proposal unless it is necessary to do so to enforce the provisions of Rule 1.442.  *See id.*

When deciding whether to grant an offeror's motion for an award of attorneys' fees under section 768.79, a court should consider the following:

 (1) If a party is entitled to costs and fees pursuant to applicable Florida law, the court may, in its discretion, determine that a proposal was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees.
 (2) When determining the reasonableness of the amount of an award of attorney's fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following factors:
  (A) The then-apparent merit or lack of merit in the claim.
  (B) The number and nature of proposals made by the parties.
  (C) The closeness of questions of fact and law at issue.
  (D) Whether the party making the proposal had unreasonably refused to furnish information necessary to evaluate the reasonableness of the proposal.
  (E) Whether the suit was in the nature of a test case presenting questions of far reaching importance affecting nonparties.
  (F) The amount of the additional delay cost and expense that the party making the proposal reasonably would be expected to incur if the litigation were to be prolonged.

Fla. R. Civ. P. 1.442(h).  *See also* § 768.79(7)(b), Fla. Stat.

Mid-Continent's proposal for settlement met all the foregoing requirements. It was in writing and stated that it was being served pursuant to Section 768.79.  It identified the Bradfields as the party to whom it was being made, and it stated with particularity the amount being offered to settle all claims for relief in the case.  A copy of a proposed release was attached to the offer.

12

Further, the offer was served more than 45 days before the three week trial period of June 30, 2013 to July 18 2014. Finally, it included the required certificate of service.[4]

### a. Mid-Continent's $7,500 Offer Was Valid And In Good Faith

Under Eleventh Circuit precedent the Bradfields have the burden of proving Mid-Continent made the offer in bad faith. *See McMahan v. Toto*, 311 F.3d 1077, 1083 (11th Cir. 2002). This is a burden they cannot satisfy because Mid-Continent did not make a nominal offer but even if it had, the Court's "determination is not controlled by a legal imperative requiring a finding of bad faith merely because the offer was nominal." *Fox v. McCaw Cellular Communications of Fla., Inc.*, 745 So. 2d 330, 334 (Fla. 4th DCA 1998). Instead, under Florida law a minimal offer can be made in good faith "if the evidence demonstrates that, at the time it was made, the offeror had a reasonable basis to conclude that its exposure was nominal." *Nants v. Griffin*, 783 So. 2d 363, 364-65 (Fla. 5th DCA 2001). The reasonableness of the offeree's rejection of the offer is also irrelevant to the question of the offeror's entitlement to attorney's fees under Section 768.79. *See Peoples Gas Sys., Inc. v. Acme Gas Corp.*, 689 So. 2d 292, 300 (Fla. 3d DCA 1997). As long as "the offeror has a basis in known or reasonably believed fact to conclude that the offer is

---

[4] The Bradfields' inclusion of a declaratory judgment count in their complaint against Mid-Continent does not preclude application of section 768.79 under the Florida Supreme Court's ruling in *Diamond Aircraft Industries, Inc. v. Horowitch*, 107 So. 3d 362 (Fla. 2013) and the recent case of *Trovillion Construction Dev. Inc. v. Mid-Continent Cas. Co.*, Case No. 6:12-cv-914-Orl-37TBS (M.D. Fla. July 16, 2014). In *Diamond Aircraft*, the court held the offer of judgment statute does not apply in limited situations where there is a "purely equitable" count alleged. *See Diamond Aircraft Industries, Inc.*, 107 So. 3d at 373. In reaching that conclusion, the court, analyzing a number of Florida appellate decisions, recognized a distinction between cases where there was a separate count that did not request payment of money or damages and cases where money or damages were the real issue, even if sought under the guise of a "declaratory" count. *See id.* at 373-75. Rather than reject these cases, the court in *Diamond Aircraft* agreed with their rationale. *See id.* at 373. The Honorable Roy B. Dalton, Jr. relied on *Diamond Aircraft* when holding that Trovillion's inclusion of a declaratory judgment count did not preclude Mid-Continent from obtaining attorney's fees after Trovillion rejected a proposal for settlement because that case's real issue always pertained to Trovillion's desire to collect from Mid-Continent the amount of the consent judgment. *See* Pages 2 through 6 of Judge Dalton's July 16, 2014, Order. Here, as the Court is well aware, the Bradfields' sole objective in this action was to recover the consent judgment. Thus, *Diamond Aircraft* does not apply because the Bradfields' declaratory judgment count was not "purely equitable."

13

justifiable, the 'good faith' requirement has been satisfied." *Dep't of Highway Safety & Motor Vehicles v. Weinstein*, 747 So. 2d 1019, 1021 (Fla. 3d DCA 2000).

For instance, in *McMahan*, the Eleventh Circuit affirmed an award of attorney's fees to a prevailing defendant under Section 768.79 where the defendant made a $100 settlement proposal in the face of a multi-million dollar claim for damages. 311 F.3d at 1083-84. Similarly, in *State Farm Mutual Automobile Ins. Co. v. Marko*, 695 So. 2d 874 (Fla. 2nd DCA 1997), the court held an automobile insurer joined as a defendant in an action against the tortfeasor was entitled to recover its attorney's fees under section 768.79 where the insurer had made an offer of judgment of $1. *See id.* at 876. The court found that the offer was "a statement by State Farm that it believes it has no liability and should not be part of the litigation. Under these circumstances the good faith of the $1 offer of judgment is demonstrated." *Id. See also Levine v. Harris*, 791 So. 2d 1175, 1179 (Fla. 4th DCA 2001) (reversing the trial court's denial of motion for attorney's fees under section 768.79 on ground that nominal $500 offer was made in good faith where offeror was confident it had no liability to offeree).

Here, Mid-Continent made a $7,500 offer to the Bradfields in the face of a $696,108 consent judgment. At the time it served the offer, Mid-Continent believed it had viable affirmative defenses to the Bradfields' claims. *See* Exhibit B. To begin with, Mid-Continent never issued any insurance policies to Horgo Signature Homes and based on more than one case involving Mid-Continent, Horgo Signature Homes was not an additional insured unde the policies issued to Horgo Enterprises. *See Bradfield v. Mid-Continent Cas. Co.*, Case No. 5:13-cv-222-Oc-10PRL, 2015 WL 6956543, *10 (M.D. Fla. Nov. 10, 2015) (referencing *Mid-Continent Cas. Co. v. Construction Servs. & Consultants, Inc.*, 2008 WL 896221 (S.D. Fla. Mar. 31, 2008) and *United Rentals, Inc. v. Mid-Continent Cas. Co.*, 843 F. Supp. 2d 1309 (S.D. Fla. 2012)). In addition, as the Court held when granting Mid-Continent's Amended Motion for Summary Judgment Regarding Winfree

15151568V1 0946262

Homes, no duty to defend Winfree Homes existed because the Bradfields' underlying complaint did not assert that entity caused property damage that was not otherwise excluded. *See Bradfield*, 2015 WL 6956543 at *12.

Moreover, under Florida law, a consent judgment cannot be enforced if the entire amount is not shown to be reasonable – it is, as the Eleventh Circuit held when affirming a judgment in another Mid-Continent case before Mid-Continent served its offer of judgment to the Bradfields, "an all or nothing proposition." *See Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 534 Fed. App'x 926, 928 (11th Cir. 2013). The Bradfields' consent judgment incorporated the settlement agreement which incorporated by reference Mr. Swidler's report mentioning mold and construction defects like the roof, too thin drywall and an improperly finished air handler. Not only was the consent judgment not allocated between covered and non-covered items, the consent judgment was also unallocated between non-insured Horgo Signature Homes and Winfree Homes. Based on these facts, it cannot be said that Mid-Continent's $7,500 offer of judgment was not in good faith or not valid.

    **b. The $312,310.5 In Attorney's Fees Mid-Continent Incurred Were Reasonable And Necessary**

A federal court must apply state law to determine whether the attorney's fees sought by a party are reasonable. *See Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002). While Florida law in large part follows the federal lodestar approach, it also allows for the consideration of the subjective factors set out in the Florida Rules of Professional Conduct, as well as the six similar factors set out in Florida Statute Section 768.79(7). *See Sarkis v. Allstate Ins. Co.*, 863 So. 2d 210, 213 (Fla. 2003). The party seeking fees bears the burden of documenting hours and establishing reasonable rates. *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

Mid-Continent has attached to this motion the declaration of Ronald L. Kammer, lead counsel for Mid-Continent in this litigation. His declaration affirms that Mid-Continent incurred a total of $312,310.5 in fees 1,598.7 hours of billed work between the date of the offer of judgment and the date final judgment was entered. *See* Exhibit B. The affidavit details the amount of time spent by each attorney involved in this case on behalf of Mid-Continent, as well as each attorney's hourly rate and experience. Attached to Mr. Kammer's declaration are the invoices detailing each time entry billed by these attorneys and invoiced to Mid-Continent. *See id.* Mr. Kammer affirms that the hourly rates charged to Mid-Continent are not only reasonable, but also consistent with or lower than the customary hourly rates charged for insurance coverage litigation. *See id.*

Along with Mr. Kammer's declaration, Mid-Continent has also attached to this motion as Exhibit O the affidavit of outside expert counsel Gregory A. Victor of the law firm of DeMahy, Labrador, Drake, Victor, Rohas and Cabeza. Mr. Victor has been practicing law in Florida for over 33 years, and part of his practice includes insurance coverage litigation. *See* Exhibit N at ¶1. Mr. Victor affirms that he has reviewed the entire file on this matter, as well as the factors set forth in the Florida Rules of Professional Conduct and applicable case law. *See id.* at ¶¶3-5. He affirms that he is familiar with the billing rates charged for defending insurance coverage litigation, and that the rates charged by Hinshaw & Culbertson, LLP are reasonable for the work performed, and consistent with, if not lower than, the rates customarily charged for such work. *See id.* at ¶7. Mr. Victor also affirms that the time billed for each of the individual time entries appears reasonable for the work each entry describes. *See id.* ¶8. Finally, Mr. Victor affirms that, based upon his experience, the total amount of $312,310.5 in fees for 1,598 hours of billed work is reasonable. *See id.* ¶10.

Through its' submission of the attached declaration, and the attachments thereto, Mid-Continent has satisfied its burden of presenting "specific and detailed evidence from which the

court can determine the reasonable hourly rate" and the reasonable number of hours charged. *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). The Court should therefore award Mid-Continent its' attorney's fees in the amount of $312,310.50.

**D.** **Mid-Continent Is Entitled To Interest On The Taxable Costs**

Pursuant to 28 U.S.C. § 1961(a), "[i]interest shall be allowed on any money judgment in a civil case recovered in a district court . . . Such interest shall be calculated from the date of the entry of the judgment." The Eleventh Circuit has further specified that "interest shall accrue on . . . taxable costs from the date the court entered final judgment." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052 (11th Cir. 1994). The post-judgment interest rate is "equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). Mid-Continent is consequently entitled to interest from the date of this Court's November 16, 2015, Judgment. *See* [D.E. 152].

WHEREFORE Mid-Continent Casualty Company respectfully requests that this Court enter an order awarding Mid-Continent $312,310.50 in attorney's fees, $46,399.58 in taxable costs and post-judgment interest plus any other relief the Court deems just under the circumstances.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ MELISSA A. GILLINOV
Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
Melissa A. Gillinov
Florida Bar No. 11892
mgillinov@hinshawlaw.com
2525 Ponce de Leon, Blvd., Fourth Floor
Miami, Florida 33134

15151568V1 0946262

>Telephone: 305-358-7747
>Facsimile: 305-577-1063
>*Counsel for Mid-Continent Casualty Company*

## VERIFICATION

Under penalty of perjury, the undersigned declares that the facts and law set forth in this motion are true and correct to the best of her knowledge and belief.

>/s/ MELISSA A. GILLINOV
>Melissa A. Gillinov

## RULE 3.01 CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned counsel for Mid-Continent certifies that on November 25, 2015, the Parties conferred telephonically in a good faith effort to resolve the issues raised in this motion. The Bradfields' counsel conveyed that they are currently unable to agree to the relief requested but discussions are ongoing. Mid-Continent will promptly notify the Court if the Bradfields eventually agree to any part of the requested relief.

>/s/ MELISSA A. GILLINOV
>Melissa A. Gillinov

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2015 I e-filed this document using the CM/ECF system. I further certify that I am unaware of any non CM/ECF participants.

>/s/ MELISSA A. GILLINOV
>Melissa A. Gillinov

15151568V1 0946262